# CHARLESTON.

COLLINS *v.* HITE *et al.*

(No. 6671)

Submitted April 15, 1930. Decided April 22, 1930.
(Rehearing Denied May 29, 1930.)

*Henry S. Cato,* for appellant.

*Livezey, Hogsett & McNeer* and *John T. Delaney,* for appellees.

WOODS, JUDGE:

Justus Collins, a minority stockholder of the Collins & Mayo Collieries Company, instituted the present suit against the corporation and the several officers and stockholders thereof, including W. L. Gentry, the bookkeeper, for the purpose, among other things, of requiring W. F. Hite (a director) who was secretary-treasurer, to make refund to said corporation of moneys paid out prior to July 5, 1928, by said secretary-treasurer as salaries of said secretary-treasurer and the bookkeeper in excess of the salaries duly authorized; and of having the court fix a fair and reasonable salary for said secretary-treasurer and said bookkeeper, in lieu of the alleged excessive salaries fixed at a stockholders' and directors meetings held on July 5, 1928. A demurrer, interposed on the ground that the bill disclosed a lawful authorization and ratification on the part of the majority of stock, was sustained and the bill dismissed. Plaintiff appeals.

It appears from the bill that prior to July 5, 1928, the company had but three directors, namely, Collins, Mayo, and Hite; that Collins, after an audit, found out early in 1928 that certain unauthorized salaries had been paid out over a period of several years by Hite, as secretary-treasurer, to himself as such, and to Gentry, as bookkeeper; that the plaintiff had no knowledge whatsoever of said misappropriation of the company's assets by the said defendants Hite and Gentry until the same was disclosed by the audit of its books aforesaid; that as soon as the facts thereof came to his knowledge through his

examination of said audit, plaintiff, by letter, brought such facts to the attention of all of the stockholders of the company, and requested their said proxies to be used at the coming annual meeting of the stockholders of the company in taking the steps necessary to recover said misappropriated assets; but that the plaintiff received replies to only two of said letters, one of them from Mrs. Lilly E. Gahr, inclosing proxy, for said meeting, and the other from the defendant F. M. Whitaker, refusing to have anything to do with the matter in question; that thereupon, under date of June 14, 1928, plaintiff wrote to the defendant Hite reciting the amount of said misappropriation by the said Hite and Gentry, his unsuccessful effort to interest the other stockholders with the exception of Mrs. Gahr, in recovering them, and the fact that plaintiff's 1,723 shares, together with Mrs. Gahr's 45 shares, would give a total of only 1,768 shares, out of 6,474 shares outstanding, a minority holding insufficient to enable him to correct the situation through corporate action, and stating that his only alternative was to sue the defendant Hite individually, or ''if the majority of the stockholders should undertake to block this move by undertaking any white-wash resolutions, to ask for a receiver, and such other proceedings as my attorneys deem advisable''; that under date of June 23, 1928, the defendant Hite, as a stockholder, holding at least one-tenth of the outstanding stock of said company, gave written notice to the stockholders of the company, including plaintiff, of a special meeting of the stockholders to be held at Huntington, W. Va., on the 5th day of July, 1928, for three specific purposes: (1) To amend the by-laws of the company by increasing the number of the board of directors from three to five; (2) to elect the board of directors for the ensuing year; and (3) to consider and act upon a resolution ratifying and confirming the action of the officers of the company in the payment of all the salaries in the past, and fix salaries of the officers and employees for the future, and generally to ratify and confirm the acts and doings of the officers of the company acting in their official capacity on behalf of the company to this date; that at said meeting the directorate (over the objection of plaintiff) was increased to five; that the stockholders as well as the new directorate proceeded to ''whitewash'' the acts of

the secretary-treasurer, and to fix excessive salaries; that it also appears from the bill that Hite voted his own stock, as well as the stock represented by him as proxy (2,986 shares in all), to ratify and confirm his said excessive salary for the future; that Gentry voted as a director to ratify said misappropriation by his said codefendant Hite of the sum of $3,000 and the payment by the said Hite to him, the said Gentry, of the sum of $5,750, and to fix the salary of said defendant at said excessive amount of $150 per month; and that the said Hite in turn voted as a director to ratify the payment of said sum of $3,000 to himself and his payment of $5,750 to the said Gentry, and to fix the future salary of his said codefendant Gentry at said excessive amount of $125 per month.

Our first question is: Can any amount less than the whole of the corporate stock ratify a director's action, as secretary-treasurer, in payment of moneys over and above the authorized salaries to himself and another as secretary-treasurer and bookkeeper, respectively? Defendants would have us answer in the affirmative. They, in support of their demurrer, rely upon the broad proposition of agency that the principal can ratify the acts of his agent. They argue that since the stockholders or directors by a majority vote could have authorized salaries equal to the money actually paid to the secretary-treasurer and the bookkeeper (if the same were not excessive), that the principle permitting the corporation to ratify previous unauthorized acts in the transaction of the business of the corporation is equally applicable to contracts between the corporation and its officers. They, however, admit that such transactions, because of the fiduciary relationship existing, will perhaps be more closely scrutinized than transactions between the corporation and a stranger. "The direct or indirect misappropriation of corporate assets to the individual use or benefit of corporate officers is incapable of being authorized or ratified by a vote, or any act or omission, of a majority less than the whole of the stockholders. In other words, the ratification by a majority of the stockholders of a misappropriation of corporate funds does not bind a dissenting minority stockholder." 4 Fletcher, Corp., § 2507, pp. 3753, 3754. As held in *Ravenswood, S. & G. Railway Co.* v. *Woodyard*, 46 W. Va. 558, 33 S.

E. 285, "A president or director of a corporation stands as a trustee for it as to property of it committed to his hands for the purposes of the corporation."

The work performed by the secretary-treasurer and the bookkeeper, so far as the corporate records disclose, was performed for a specific consideration. Any amount paid out for services already performed would amount to a bonus, or gift. All income above the actual authorized salaries and operating expenses belonged to the corporation, of which the individual stockholder was entitled to his proportionate share. For a majority of the stockholders to proceed to confirm the excess salaries in this case would amount to taking money out of the minority stockholders' pocket and giving it to another. Such action, under the universal law of property, would amount to a breach of trust.

The remaining question relates to the salaries authorized by the stockholders and directors meetings of July 5, 1928. On this point the bill alleges that the annual gross income of the corporation is about $32,000; that the administrative and clerical work necessary to the conduct of the affairs of the defendant company has been for a number of years past, and now is, exceedingly light; that the company's lands are now under lease for coal, oil, or gas, and practically the only duties of the secretary-treasurer and the bookkeeper of the company are to receive, collect, and disburse the rents and royalties arising from and accruing under said leases; and that all of the clerical work likely to be required of either the said defendant Hite or the said defendant Gentry during the ensuing year can probably be performed by them by devoting a few hours each month thereto; that the salaries authorized prior to July 5, 1928, were fixed at $100 and $25 per month for the secretary-treasurer and the bookkeeper, respectively; that the salaries of $150 and $125 per month voted to the said Hite and Gentry, respectively, at the said stockholders' and directors' meetings, on the date aforesaid, are grossly excessive under the circumstances.

It is argued by the defendants that the foregoing allegations are not sufficient to warrant the interference of a court of equity. They cite *Smiley* v. *New River Co.*, 72 W. Va. 221, 77 S. E. 976, to the effect that a court will not, in the absence of

fraud, or conduct amounting to fraud, interfere at the instance of a minority of the stockholders, by receiver or otherwise, to control corporate acts or management. It is contended that the bill fails to set up any specific instances of actual fraud in the fixing of the future salaries, and that it does not, upon its face, show said salaries to be sufficiently excessive to justify a court in substituting its judgment for that of the majority of the stockholders and the directors of the company. And, for the purpose of further weakening the force of its allegations, they insist that the court will take judicial notice that the customary duties of officers of a corporation corresponding to the offices and employment held by defendants Hite and Gentry require the devotion of time and attention to many matters not mentioned in plaintiff's bill of complaint, stating, for illustration, that it is known that the reports of coal mined, oil and gas produced must be carefully checked to see that the required amount of royalties are paid; that mine maps must be inspected and other information with respect to oil and gas wells collected and preserved; that numerous and intricate reports are required to be made both to the state and federal governments in the matter of taxation, and other corporate reports are required to be made promptly to avoid the imposition of penalties, etc. Such duties generally require the assistance of experts, and we are not warranted in inferring that such duties fall upon the secretary and bookkeeper in the instant case. The resolution adopted by the stockholders fixing the salaries, as disclosed by the minutes, was made on a statement of Mr. Hite to the meeting "that because of the present condition of the coal business and the further fact that all of the company's lands were now leased for coal, oil and gas, that a salary of one hundred and fifty ($150) dollars per month to the secretary and treasurer would be reasonable," tends to corroborate the allegation in the plaintiff's bill.

In 4 Fletcher, Corp., § 2755, p. 4010, the rule is stated: "Stockholders or directors cannot take advantage of their ownership of a controlling interest in the corporation to vote to themselves excessive salaries or to cause excessive salaries to be voted to them by persons under their control. Both the stockholders and directors in fixing compensation of officers must

act in good faith and reasonably.'' In § 2779, p. 4038, of the same text, we find the following: ''In the case of exorbitant and unreasonable salaries, the court may, on petition of the minority stockholders, enjoin the payment of such salaries, and permit a recovery of the excess paid. Minority stockholders may also maintain a representative action to recover salary voted by directors to themselves. And when payment is made for past services, the money may be recovered by the corporation or its receiver or by a stockholders' suit, where the corporation refuses to act.''

When we consider the allegations of the bill in regard to the alleged excessiveness of the salaries with the allegations concerning Hite's action in regard to the calling of the stockholders' meeting, the ''whitewash'' resolution, etc., we are of opinion that sufficient facts have been pleaded to warrant equity in looking into the reasonableness of the salaries complained of.

The bill states a good cause of action, and the trial court erred in sustaining the demurrer thereto.

*Reversed and remanded.*