MILTON C. ESHLEMAN, S. A. SEALS .
and GEORGE E. JAMES, JR.,

*vs.*

ROBERT KEENAN, RUSSELL P. BREWER, JULIA A. BREWER, HARVEY W. MARVIN, HARVEY D. RITTER, SANITARY COMPANY OF AMERICA, a Delaware corporation, and WILLIAM S. POTTER, Receiver of CONSOLIDATED MANAGEMENT ASSOCIATION, a Delaware corporation.

*New Castle, July* 8, 1936.

*William Prickett,* for complainants and interveners.

*Ivan Culbertson,* for defendants.

THE CHANCELLOR: On the conclusion of the testimony in this case, the defendants moved for leave to supplement their answers by averring that the stockholders of Sanitary had been assembled in annual meeting and that a majority of the stockholders had voted in favor of a resolution ratifying, approving and confirming the action of the directors and officers of that company in respect to the matters complained against in this suit. It may well be questioned whether the court at this late stage of the case would be justified in allowing the supplement to the answer to be filed. The suit has been pending for nearly three years. The defendants have had ample time long before now to lay the whole matter before the stockholders. It looks very much as though they sought sanctuary in the stockholders' meeting only when the developments at the trial exposed the necessity of that recourse.

But I am not content to rest my disposal of the motion on that ground. There is a more fundamental consideration which is controlling. That consideration is this, *viz.,* that the bill charges a fraud and the evidence sustains it. Now where that is the case, it is not in the power of a majority of the stockholders to deprive the minority of their right to insist upon a rectification. This case is quite clearly distinguishable from *Karasik v. Pacific Eastern Corp. ante p.* 81, 180 *A.* 604, 605, decided by this court last August. In that case the question was one of the compromise of a disputed claim, and whether the sum that was offered in settlement was reasonable in view of the likelihood first of the recovery of judgment, and second, of the amount ultimately collectible thereon if judgment were obtained. The proposed supplemental answer presents no authorization by the stockholders of a compromise as in the *Karasik Case.* As it is aptly put by the solicitor for the complainants, it presents a surrender. The majority proposes to give away

what, as will hereinafter appear, is a perfectly good asset in the form of a claim belonging to the corporation, without a single thing by way of compensation in return.

Can that be done? I can find no authority justifying it. There is a wide field in which the discretion of stockholders is allowed free exercise when their judgment and authorization are appropriately asked with respect to corporate acts undertaken to be done or, if already accomplished, with respect to their ratification and confirmation. But this field of discretion does not extend so far as to permit the majority against the dissent of the minority to grant full pardon and absolution to those who have perpetrated a fraud upon the corporation. The defendants cite cases to support their contention that the stockholders of Sanitary have the right and power to ratify the transactions which the bill complains against. But those cases are either where the stockholders are for the moment acting for the corporation and are expressing their independent business judgment upon a transaction proposed to be entered into with directors who are disqualified by personal interest to speak for the corporation; or where the questioned action is merely voidable in nature. Whenever the courts in the cases cited by the defendants have taken the occasion to comment on the point, they have expressly excepted from the class of acts subject to ratification by the majority of stockholders against the will of the minority, those acts which are *ultra vires*, illegal or fraudulent.

In *Rogers v. Hill*, 289 *U. S.* 582, 53 *S. Ct.* 731, 735, 77 *L. Ed.* 1385, 88 *A. L. R.* 744, the Supreme Court of the United States quoted with approval the language of Judge Swan as follows: "The majority stockholders have no power to give away corporate property against the protest of the minority; and in *Dana v. Morgan*, (*D. C.*) 219 *F.* 313, 315, it was specifically declared that the substance of the doctrine of ratification "is that even stockholders cannot ratify a fraud." It is not necessary to review the cases dealing with the subject. The following may be referred

to among others as holding it to be beyond the power of the majority of the stockholders against the will of the minority to ratify a fraud committed against their corporation by the officers to their personal enrichment: *Brewer v. Boston Theatre,* 104 *Mass.* 378; *Hodgman v. Atlantic Refining Co.,* (*D. C.*) 300 *F.* 590, reversed on other grounds (*C. C. A.*) 13 *F.* (2d) 781; *Endicott v. Marvel.* 81 *N. J. Eq.* 378, 87 *A.* 230; *Collins v. Hite,* 109 *W. Va.* 79. 153 *S. E.* 240; *Lewis v. Matthews,* 161 *App. Div.* 107, 146 *N. Y. S.* 424; *Ford v. Ford Roofing Products Co.,* (*Mo. App.*) 285 *S. W.* 538. See, also, 2 *Fletcher, Cyc. of Corp.* § 764, *p.* 806; 13 *Id.,* § 5795, *p.* 92; 3 *Cook on Corporations* (*8th Ed.*) § 662, *p.* 2534.

If, therefore, the acts attempted to be ratified are fraudulent in character, the resolution of the majority of the stockholders is unavailing against the protests of the minority to waive the right of the corporation to be relieved therefrom.

The next question then is—was it a fraud on the corporation for its officers personally to receive the benefit of the management fee of $300.00 per month which they caused Sanitary to pay to Consolidated?

The management services which Consolidated rendered for Sanitary were rendered through the agency of Consolidated's officers, Keenan and Brewer. These same men were the important managing officers of Sanitary. They were paid salaries by Sanitary for managing it. It must be assumed that the salaries they were paid by Sanitary were satisfactory to them and fully compensatory. That they regarded themselves as acting for Sanitary and not for Consolidated in the management of the former can hardly in good grace be denied by them when in one year they participated in a bonus of $10,000.00 which as directors of Sanitary they voted as an additional reward for their skill in conducting its affairs. Of this sum Keenan, who allocated the participations, awarded to himself

$3,000.00 or $4,000.00 and to Brewer he awarded $600.00. In another year, each participated in a bonus of $5,000.00, to what extent neither can remember.

While Sanitary's officers were receiving salaries in the amounts set out in the preceding statement of facts for conducting its affairs, it was paying $300.00 a month for management services to Consolidated. No contract to pay for such services was shown at the hearing, though the same was frequently demanded to be produced. The fee appears to have had its origin in the furnishing by Consolidated to Sanitary of the services of one Scott as an auditor at $300.00 per month. Scott was dismissed and the monthly sum theretofore paid by Sanitary to Consolidated for auditing services was nevertheless continued to be paid. This was authorized by unanimous resolution of Sanitary's board. The resolution was adopted on November 19, 1934, and was as follows:

"For services rendered and to be rendered by Consolidated Management Association from time to time for and on behalf of the stockholders of this Company, and paid the sum of $300 per month as provided to be paid, payment is hereby authorized and approved."

This resolution contains the only reference in the minutes of Sanitary to the monthly fee. How it was entered in the books of Sanitary does not appear. The books were not placed in evidence by the defendants.

It is to be noted that during part of the time, something like three years as I recall, when Consolidated was being paid $300.00 per month by Sanitary for management services, Sanitary was paying $12,000.00 per year to Derbyshire as its "managing director."

Now during the period when Keenan and Brewer were being paid the salaries referred to as officers of Sanitary for services in managing its affairs, they were receiving from Consolidated monthly salaries which with the exception of the first year were either the exact equivalent of what Sanitary was paying or in excess thereof. During the

first year, Sanitary paid to Consolidated $2700.00, and Keenan and Brewer received from Consolidated $2450.00 and Marvin received $400.00. During the remaining years of the nine year period Marvin received from Consolidated the salaries set out in the statement of facts aggregating $4,550.00. Keenan's total salary payments from Consolidated throughout the nine year period were $19,800.00, and Brewer's were $10,450.00. Thus the total of salaries paid by Consolidated to Keenan, Brewer and Marvin was $34,800.00; and the total of management fees paid by Sanitary to Consolidated was $28,800.00.

Keenan, Brewer and Marvin were at all times the majority of the board of directors of Sanitary, and Keenan and Brewer were its two most important officers. Marvin appears never to have been an officer. He never appears to have rendered it any service other than that of director and was never paid a salary by it.

Keenan and Brewer were Sanitary's active officials and directed its operation. They were also the active management officials in Consolidated. What they did was to direct Sanitary to employ them for managing its affairs and then, in large part with moneys paid to Consolidated by Sanitary, direct the latter company to pay them salaries for rendering in its behalf to Sanitary the management service which Consolidated was to furnish and which they were already under duty to supply to Sanitary in consideration of the salaries which that company was paying them. This was using their control of the two corporations to effectuate a plan to make Sanitary compensate them twice for the same service. The transaction was one which they effected by dealing with themselves. The stockholders were ignorant of it. How the arrangement they made can stand in a court of equity it is impossible to see. Whatever might be the views of the individuals who profited by these equivocal acts as to their propriety in morals, they must be condemned as fraudulent in the eyes of the law. When Keenan and Brewer were asked to point out what manage-

ment services they rendered to Sanitary in their role of officers of Consolidated which could not be assigned to them as officers of Sanitary, their responses were completely unsatisfactory. They chose to place themselves in the difficult position in which men always find themselves who undertake to split their personalities. No impartial voice in the corporation having spoken in authorization of their double compensation and it appearing, in addition, that the management services rendered to Sanitary by them as officers of Consolidated were no more than the services they owed to Sanitary as its paid officers, restitution must be decreed. The case for relief which the bill presents seems so plain that it does not appear worth while to cite authorities in its support.

As Keenan, Brewer and Marvin were in control of Sanitary as its directors, the wrong done to that company was their joint wrong. The decree must go against all three of them, notwithstanding one of them, Marvin, was paid no salary by Sanitary. He was fully advised of all the facts however and was himself a recipient of salary from Consolidated whose means of payment to him were augmented by the device of the management fee coming to it from Sanitary. His joining with his associate directors in the wrongful authorization of the management fee makes him jointly liable with them for the injury which it did to the corporation. *Cahall v. Lofland, et al.,* 12 *Del. Ch.* 299, 114 *A.* 224, affirmed, 13 *Del. Ch.* 384, 118 *A.* 1; *Cahall v. Burbage, et al.,* 14 *Del. Ch.* 55, 121 *A.* 646; *Atwater v. Elkhorn Valley Coal Land Co.,* 184 *App. Div.* 253, 358, 171 *N. Y. S.* 552.

At the outset of this opinion reasons were stated why the defense of ratification would not be allowed in bar of the bill. Whether ratification and therefore approval by a majority of the stockholders, while not sufficient to bar a remedy to the minority, may nevertheless be shown for the purpose of confining the relief of the decree to the dissentients only, is a question which the proposed supplement to the answer did not present. If the company was solvent

and its capital unimpaired, it may be seriously questioned whether restitution should be awarded beyond an amount sufficient to redress the injury to the non-assenting minority only. See *Matthews v. Headley Chocolate Co.*, 130 *Md.* 523, 100 *A.* 645. This question has not, however, been debated either at the bar or on the briefs. The court in its desire to see justice done is prepared, if the responsible defendants desire, to entertain the question and, if the answer of the law thereto be in their favor, to permit the pleadings to be so shaped as to bring it forward. Views of the solicitors with respect to this aspect of the case may be presented, if desired, before a draft of the decree is submitted.

Decree in accordance with the foregoing.