**KNAPP v. IMPERIAL OIL & GAS
PRODUCTS CO.**

**No. 4935.**

Circuit Court of Appeals, Fourth Circuit.

Aug. 27, 1942.

Thomas J. Davis and Samuel A. Powell, both of Harrisville, W. Va., for appellant.

J. Campbell Palmer, III, of Charleston, W. Va. (Koontz & Koontz and W. W. Goldsmith, all of Charleston, W. Va., Shotwell & Brown, of Monroe, La., and John P. Hickey, of Pittsburgh, Pa., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought by W. A. Knapp, a citizen of Texas, against Imperial Oil & Gas Products Company, a West Virginia corporation, to recover the sum of $25,000 alleged to be due him under two verbal contracts between him and the company. In his complaint he charged, first, that in the early part of 1932 it was verbally agreed between him and the company, acting through Joseph Hartman, its president, that the company would pay him a royalty or bonus of $\frac{1}{2}\cancel{c}$ per pound on all the Kohinoor carbon black manufactured by it at its plant at Sterlington, Louisiana, the payments to continue as long as the black should be made by the company. Knapp was superintendent of the plant from March, 1929 to July 1, 1937 at a regular salary which ranged from $300 to $434 per month. He alleged in his complaint that he was promised the additional payments in lieu of an increase in his fixed monthly salary and in consideration of the benefits accruing to the company from his success in producing this particular grade of carbon black at a lower cost than the company had been previously able to do, and in consideration of a continuation of his efforts on the company's behalf; and that in accordance with this agreement payments were in fact made in the aggregate sum of $4922.91 for the period beginning September 1, 1931 and ending April 30, 1937.

Secondly, he alleged that he continued his efforts in the employ of the company and succeeded in producing other high grade carbon blacks at lower costs than the company's competitors could achieve; and that in March, 1934, he and the president of the company, acting on its behalf, entered into a second verbal agreement under which the company promised to pay him a similar royalty or bonus of $\frac{1}{2}\cancel{c}$ per pound on all the high grade carbon blacks manufactured at its Sterlington plant from the time he became superintendent thereof, that is, on the blacks known as Kohinoor, Intenso, Supertone, Blacktoner, Eureka and Imperial 50; and that this agreement was made in consideration of his efforts on the company's behalf and the benefits that had resulted and would result therefrom, and in lieu of an increase in his regular monthly salary. He further charged that the company thereafter continued to pay him the agreed royalty on the Kohinoor black, but failed to pay him the royalty on the other blacks for the reason that he refused to sign a written contract submitted to him by the president of the company on March 23, 1934, which did not properly set out the terms of the oral contract; and that this practice continued up to and including the month of April, 1937, and that he was discharged from the company's employ on July 1, 1937. It is conceded that in 1934 Knapp was dissatisfied with tentative arrangements that had been made for the distribution of business amongst the manufacturers of carbon black, including the defendant company, under the National Recovery Administration, and, therefore, additional conversations in respect to bonus payments took place in March of that year. These, in substance, were the allegations of the bill of complaint and of evidence offered by the plaintiff in support thereof.

The company in its answer conceded that the defendant was successful in producing certain grades of carbon black as the combined result of the services and efforts of its employees engaged in the manufacture of carbon blacks at the Sterlington plant, and that it was the plaintiff's duty as superintendent of the plant to use his best efforts to produce such grades and qualities of goods as were required in the business. But the defendant denied the making of the verbal agreements of 1932 and 1934, as alleged in the complaint. The defendant alleged that in 1931 the president of the company stated to the plaintiff that if he would manufacture a grade of Kohinoor black equal to that formerly made at the company's plant at Hannahdale, West Virginia, the company would give him something of value; and that upon being informed that the plaintiff had succeeded in making the black, the president of the company stated to him that he would give him as a bonus or gratuity for his services rendered and to be rendered as superintendent of the Sterlington plant, $\frac{1}{2}\cancel{c}$ per pound on all the Kohinoor black

manufactured and sold from the plant as long as the plaintiff remained in its employ and cooperated with the officers of the company, until the plaintiff had been paid a respectable or substantial sum.

With respect to the verbal agreement alleged by the plaintiff to have been made in March, 1934, the defendant alleged that its president stated to the plaintiff that it desired to enter into a contract with the plaintiff for the payment of a bonus or gratuity for the services of the plaintiff to be thereafter rendered; that the details of the proposed agreement were not definitely fixed, and later, on March 23, 1934, the president wrote a letter to the plaintiff enclosing a form of written contract embodying the terms upon which the defendant was willing to pay a bonus in addition to the plaintiff's salary for further services. Under this draft the defendant company promised as long as the plaintiff remained in its employ as superintendent of the Sterlington plant to pay him ½¢ per pound on all the carbon blacks manufactured and sold after January 1, 1934, of the qualities known as Kohinoor, Intenso, Supertone and Imperial 50, provided the plaintiff would confirm an agreement entered into between the parties on June 24, 1931 in which the plaintiff agreed that he would not during his employment with the company or afterward, without the consent of the defendant, disclose to any persons any trade or other secret relating to the manufacturing processes of the company. But the plaintiff refused to execute the proposed agreement and therefore there never had been a fixed agreement between the parties with reference to any further bonus or gratuity. These, in substance, were the allegations of the answer to the complaint, and of the evidence offered by the defendant in support thereof.

The District Judge heard the evidence, sitting as a court without a jury, and entered a judgment for the defendant. The judge made no detailed findings of fact but stated his ultimate findings in the following terms:

"It is found by the court that the plaintiff and defendant made no contracts in 1932 or 1934, nor at any other time, as claimed by the plaintiff in his pleadings and in his evidence; that Joseph Hartman was not authorized by the defendant to enter into any such contracts with the plaintiff; and that plaintiff's regular duties, for which he was hired and paid his regular compensation, included experiments to produce new and better blacks, and to improve the quality of all blacks and the production of them as economically as possible."

We do not regard these general findings as a sufficient compliance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which is as follows:

"Rule 52. Findings by the Court

"(a) Effect. In all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court."

We should, therefore, be justified in remanding the case to the District Court in order that specific findings of fact may be made. City of Sumter v. Spur Distributing Co., 4 Cir., 110 F.2d 649; Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 60 S.Ct. 517, 84 L.Ed. 774; Interstate Circuit, Inc., v. United States, 304 U.S. 55, 58 S.Ct. 768, 82 L.Ed. 1146; Fogle v. General Credit, 71 App.D.C. 338, 110 F.2d 128; Humphrey v. Helgerson, 8 Cir., 78 F.2d 484; Siano v. Helvering, 3 Cir., 79 F.2d 444; Southwestern Bell Telephone Co. v. City of San Antonio, 5 Cir., 75 F.2d 880. But, we have been requested by counsel for both parties to expedite the final decision and to reduce the expense of litigation by retaining the case and making our own findings of fact, the plaintiff contending, however, that we should make these findings independently and give no weight whatsoever to the provision of the rule that findings of fact by the trial court should not be set aside on appeal unless clearly erroneous. In other jurisdictions, appellate courts have on occasion considered the merits of the litigation before them instead of remanding the cases in

order that specific findings of fact should be made by the trial courts in strict compliance with the rule, especially where the issue of fact was sharply drawn and the general finding of the trial court clearly indicated the basis for its decision. See Shellman v. Shellman, 68 App.D.C. 197, 95 F.2d 108; Goodacre v. Panagopoulos, 72 App.D.C. 25, 110 F.2d 716; Katz Underwear Co. v. United States, 3 Cir., 127 F.2d 965. This course was followed at the request of counsel in Helfer v. Corona Products, 8 Cir., 127 F.2d 612. Accordingly, we have examined the testimony and have reached the conclusion that the greater part of the judgment of the District Court should be sustained. In doing so, however, we have not thought that we should completely disregard the general findings of the District Court; for it is obvious from that portion of the final judgment hereinbefore set out that the District Judge was not convinced that verbal agreements were made by the parties to the cause, as claimed by the plaintiff. This is clear from the statement in the judgment that the court found that the plaintiff and defendant made no contracts in 1932 or 1934, nor at any other time, as claimed by the plaintiff in his pleadings and in his evidence, which we have been at some pains to set out.

We are satisfied from our own examination of the record that this conclusion was sound. It is true that Knapp worked for the company long and faithfully over a period of 23 years, and was superintendent of the company's plant first at Hannahdale, West Virginia, and later at Sterlington, Louisiana for nearly 20 years. He was of an original and inventive turn of mind and after acquiring familiarity with the business, became an expert and succeeded in developing improved processes for the manufacture of various kinds of goods that proved of substantial value to his employer. The surest proof of these facts is found in the payment to him of a substantial fixed monthly salary and in addition a substantial bonus calculated upon the production and sale of one of the most important of the company's products. Moreover, his account of the oral agreements was corroborated by his wife; and he refused to sign the written draft of an agreement submitted in March, 1934, which differed from his version of the oral agreements with respect to the duration of the bonus payments.

On the other hand, the evidence shows quite clearly that Knapp came to the company as an inexperienced young man of 22 and gained his eminence in the industry from this opportunity; that the work he did in the development of manufacturing processes was precisely the kind of work he was instructed and paid to perform, and in his efforts he was furnished with plant and material and assistance at the company's expense. In recognition of these facts he assigned to the company such inventions as he made. Moreover, he made no complaint for more than 3 years after March, 1934, although the company, despite its alleged oral contract in that month, failed to pay him a bonus on any product except Kohinoor; and he made no protest during this period although every quarterly statement of the Kohinoor sales, accompanied by the company's check for the bonus on that product, contained the words "voluntary allowance on sales". The most significant circumstance of all, in weighing the evidence, is the great improbability that a manufacturer would agree to pay an employee, no matter how valuable or efficient, a bonus on the manufacture or sale of its product whether he remained in its employ or not, and whether he should be living or dead. Encouragement of an employee actively associated with an enterprise by bonus payments is a customary expedient, but a promise to make bonus payments to an employee who might have no interest in the business, for an indefinite period, which might even exceed the period of monopoly allowed by the patent statute, would be so devoid of common business prudence as to be well nigh incredible.

We are therefore in accord with the judgment below on the turning point of the case. However, one item of minor importance remains to be considered. The bonus, calculated on sale of Kohinoor was paid to the plaintiff from September 1, 1931 to April 30, 1937, but was not paid him for the last two months of his employment ending June 30, 1937. We think this sum is due him by the defendant, under its own version of the arrangement of 1932. In our opinion, this arrangement amounted to a binding contract to pay the plaintiff a bonus on the sale of Kohinoor as long as he remained in its employ and cooperated with its officers. The balance due him for the last two months cannot be ascertained from the record because the

figures offered by the plaintiff at the trial related to production and not to sales; and we find that the bonus agreed upon and actually paid to April 30, 1937, was based on sales. The case must therefore be remanded in order that the amount of bonus still due, with interest, may be calculated.

In view of the long continued payment of the bonus and the close contact of the officers and directors with the business of a closely held corporation, there is no merit in the contentions that the president of the company had no authority to make the bonus contract, and the Board of Directors had no sufficient knowledge thereof to be charged with its ratification. Nor is there substance in the argument that the bonus contract was devoid of consideration and therefore invalid under the West Virginia law, because the plaintiff was employed and paid to perform the services rendered in the form of a fixed monthly salary. The evidence shows that the plaintiff was offered the bonus in addition to his regular salary, in consideration of a continuation of his efforts in the company's behalf, and since he remained with the company and rendered the services, he is entitled to recover accordingly. There is nothing at variance with this holding in Thomas v. Mott, 74 W.Va. 493, 82 S.E. 325, or Collins v. Hite, 109 W.Va. 79, 153 S.E. 240.

Reversed and remanded.