134 A.2d 480 (1957)
Isaac PUTTERMAN, Robert L. Levine and Barbara G. Mayer, Plaintiffs,
v.
Erie V. DAVELER, Raymond B. Hindle, Lee B. Morey, Robert G. Stone, Alton Austin Cheney, Arnold Hoffman, Henry T. Mudd, Clifton L. Wyman, and Reserve Mining Company, a corporation of the State of Minnesota, and Mesabi Iron Company, a corporation of the State of Delaware, Defendants.
Court of Chancery of Delaware, New Castle.
August 29, 1957.
Arthur G. Logan and Vincent A. Theisen, Wilmington, for plaintiffs.
Aaron Finger, Wilmington, and Chadbourne, Parke, Whiteside & Wolff, New York City, for defendants other than Reserve Mining Co.
William S. Potter, Wilmington, and Jones, Day, Cockley & Reavis, Cleveland, Ohio, for defendant Reserve Mining Co.
MARVEL, Vice Chancellor.
Plaintiffs, who claim to be the owners of more than 3,550 of the 1,205,000 issued and outstanding shares of the common stock of the defendant, Mesabi Iron Company, a Delaware corporation, allege that they were stockholders at the time of the matters of which they complain and charge that the directors of Mesabi, who are also named defendants, have been derelict in their fiduciary duty to their stockholders. These alleged derelictions in duty center around the individual defendants' handling of contractual arrangements with the defendant, Reserve Mining Company,[1] a Minnesota *481 corporation, arrangements which date back to 1939, and under the terms of which Mesabi is entitled to share in Reserve's net profits if and when earned. The complaint also seeks rescission of these contractual arrangements.
Plaintiffs contend inter alia that had Mesabi's directors caused Reserve promptly and properly to account to Mesabi, Reserve rather than having sustained losses to date in its operations, as it claims, would actually be accountable to Mesabi for some $8,000,000 of actual net profits as of December 31, 1956.
The matter now before me for decision is plaintiffs' motion for an extensive production of those documents concerning contractual agreements between Mesabi and Reserve which have not already been produced by Mesabi in support of its motion for summary judgment. Plaintiffs claim that they require these additional documents concerning the contracting parties' handling of their interests in mining properties situate in the Mesabi Range in Minnesota in order properly to resist defendants' motion for summary judgment. In order to dispose of plaintiffs' motion it will be necessary to review in some detail the history of business relations between the defendant corporations.
It appears from the pleadings and other papers before me that in the year 1919 Mesabi acquired the so-called Peters mineral lease in the Mesabi Range in Minnesota. The portion of the range so acquired holds a type of iron ore known as taconite, which while known at the time to contain metal of superior grade, is a coarse material which is difficult to refine. For many years little effort was made to use taconite in the manufacture of steel because such an operation did not appear to be economically feasible in the light of market conditions and the practical problem of extracting admittedly high grade blast furnace feed from what was in fact a low grade and inaccessible source material.
D. C. Jackling, Mesabi's president from its organization in 1919 until 1953 and thereafter chairman of the board until his death in 1956, had become interested as early as 1913 in the possibility of adapting his methods of extracting copper from low grade ores to the beneficiation of taconite. The pioneer work thereafter ensuing resulted in the corporate organization of Mesabi in 1919. While a plant was built at Babbitt in that year, and while in fact experimental sinter produced at an earlier 100 ton experimental plant at Duluth had been used in producing armor plate in 1918, Mesabi up until 1939 had not been able to operate commercially and had in fact shut down in the 1920's because of production problems and depressed conditions in the steel market.
In 1939, Mesabi in an effort to obtain some return from what were potentially valuable mining interests entered into two contracts with Reserve, one an assignment of the so-called "Peters' Lease" (which Mesabi had acquired in 1919) and the other a lease of additional lands which Mesabi had acquired in the meantime. The assignment set forth terms and conditions governing Reserve's operation of the properties in question as well as part of the payments to be made to Mesabi including one third of the "net profits" as therein defined. The lease provided that the percentage of Reserve's net profits payable to Mesabi under the assignment would constitute full consideration for the lease except for a payment made to Mesabi in 1939.
The parties to these agreements anticipated that it would take not more than fifteen years to launch a profitable operation of at least 10,000 gross tons of crude ore *482 daily and in fact by the beginning of 1957 Reserve's full size commercial plant unit at Silver Bay was in full scale operation. During these preliminary operations Reserve had spent enormous sums in opening up a vast new type of mining operation and annually reported to Mesabi net losses as follows: $2,353,001.78 for 1953, $4,609,314.68 for 1954, $8,859,003.21 for 1955 and $4,380,854.71 for 1956.
Mesabi, to be sure, did not accept these stated losses as properly claimed under the terms of the parties' agreements and on receipt of Reserve's loss statement for 1954, objected to Reserve's stated plan to recoup out of current earnings its outlay of development moneys before making any payments to Mesabi. Mesabi took the position that the costs of developing and operating a pilot plant should be capitalized and amortized and also objected to the price assigned to the finished taconite pellets. Following extensive correspondence during which other issues were interjected into the parties' dispute, Mesabi finally took a firm position that the capitalization issue must be settled before other disputes under the contract were considered, and its directors resolved to invoke the arbitration clause of the lease for settlement of the capitalization issue. Prior to arbitration, however, Reserve agreed that all of its losses prior to January 1, 1956, when properly determined, would be capitalized and amortized over a period of thirteen years beginning in 1956. These losses up to January 1, 1956 were claimed by Reserve to total approximately $18,000,000 and were thereafter made the subject of study by Mesabi's accountants. At this point Reserve's report for 1955 was received in which many new and questionable items of loss were claimed including power expenses and those of railroad and port facilities. Inconclusive negotiations ensued culminating in the filing of another large loss statement by Reserve for the year 1956. Finally on March 22, 1957 Mesabi again invoked the arbitration clause this time on a broad base which Reserve further broadened and arbitration proceedings are now in progress.
The arbitration clause of the lease provides as follows:
"Fifteenth: D. C. Jackling, as representative of the Lessor, and Gilbert R. Johnson, as representative of the Lessee, are hereby constituted a permanent Board of Arbitration. Either party from time to time hereafter upon Ten (10) days' written notice to the other party, may substitute any person in lieu of its representative. Said Board shall have power, upon the written concurrence of both of its members, to determine every question which may arise under this lease or under said assignment of the Peters Lease or said Cloquet Lumber Company lease. If they fail to agree they shall name a disinterested third party, and the question in dispute shall be submitted to the three, and a decision of a majority thereof shall be final and binding upon both parties; but if they shall fail, or be unable to agree upon any such third person, then he shall be appointed by a Judge of the District Court of the Eleventh Judicial District in and for the County of St. Louis, State of Minnesota."
The basic theory behind plaintiffs' case is that assuming the clause to be valid, which plaintiffs deny,[2] the Mesabi directors have not used such clause effectively, that because of inaction on the part of the Mesabi directors and the ineffectualness of such effort as has been made under the arbitration clause, the Mesabi stockholders *483 have failed to receive the benefits which should have accrued to them had Reserve been forced promptly and properly to account to its lessor. Underlying this theory is an inference that Reserve and its customers and owners, Armco Steel Corporation and Republic Steel Corporation, have in some manner forced the Mesabi directors to betray their stockholders' interest, however, the complaint fails to state any basis for a finding that there has been such a fraudulent breach of fiduciary duty. If the individual defendants through inaction have deliberately brought about a situation damaging to the Mesabi stockholders, they have damaged themselves. Inasmuch as they or their families have a direct or indirect interest in approximately 160,000 shares of Mesabi stock, a deliberate effort on the part of the individual defendants to injure Mesabi would involve self-injury. There is no conceivable motive for this apparent in the pleadings or other papers before me. Compare Gropper v. North Central Texas Oil Company, Del. ch., 114 A.2d 231.
As stated, the specific matter before the Court for decision is whether or not Mesabi should be directed to produce certain documents which plaintiffs seek to examine, and if so, which of said documents are entitled to protection under Rule 30(b) should defendants seek relief under the terms of such latter rule. Plaintiffs contend that they are entitled to examine the documents sought to be produced in order adequately to oppose Mesabi's pending motion for summary judgment.
Mesabi in its motion for summary judgment contends that the undisputed facts in the present record disclose that plaintiffs are merely objecting to the individual defendants' exercise of business judgment, that plaintiffs have not alleged and cannot show any loss to Mesabi as a result of the acts complained of, that plaintiffs failed to comply with Rule 23(b) of this Court and that following commencement of the action the Mesabi stockholders, when apprised of its nature by one of plaintiffs' attorneys, declined to support it. Alternatively defendants' motion seeks an order directing a separate trial of the issue as to whether or not plaintiffs in effect have a standing to prosecute this action against Reserve Mining Company in the stead of Mesabi Iron Company.
Mesabi and the individual defendants oppose plaintiffs' pending motion on several grounds, namely, absence of any showing of good cause, that the production of such documents would prejudice Mesabi's own efforts to obtain a proper accounting from Reserve and would usurp Mesabi's rights in such matter, and finally that many of the documents sought are privileged.
I find it necessary only to consider the defense of good cause and the relation of that doctrine to plaintiffs' present standing in this Court. While the pending motion of Mesabi and the individual defendants for summary judgment is not before me for decision, in my opinion Mesabi should not be ordered at this time to produce any and all documents having to do with its sole business enterprise in view of the pending arbitration proceeding and the fact that the issue of director liability, if any, is clearly separable from that of the measure of the ultimate recovery sought. Compare Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449.
It has been stated by this Court that Rule 23(b) requires that a complaint state with particularity the effort made by a complaining stockholder within the corporate body to correct an alleged corporate wrong or the reasons for not making such effort. The complaint here states that the plaintiff, Putterman, appeared at the 1955 annual meeting of stockholders and requested the Mesabi directors and stockholders to expedite arbitration proceedings. He further urged that in the event of delays that appropriate court action be taken. The complaint also alleges that at a later date the plaintiff, Levine, made similar demands on the directors. Plaintiffs charge that appropriate *484 action has not been taken by the directors. The complaint concludes that further demands would be futile because the Mesabi directors and stockholders have failed and refused to act and because "* * * the directors of Mesabi, the individual defendants, with Reserve own and control more than working control of the outstanding common stock of Mesabi * * *", but, as stated above, the complaint is silent as to a motive for the misuse of such alleged control.
Thereafter the complaint was filed on March 25, 1957 and on April 29, 1957 Mesabi answered admitting contractual violations by Reserve but stating that the disputes arising as a result of Mesabi's objections to Reserve's accounting methods are being arbitrated and that the complaint fails to state a claim. The minutes of the April 22, 1957 annual meeting of stockholders of Mesabi disclose that one of the attorneys for the plaintiff, Putterman, introduced a resolution at said meeting to the effect that the corporation support this derivative action. The resolution was overwhelmingly defeated, the actual vote being 898,675 to 2,500 against the motion with some 3,000 other shares not voting but apparently in favor of the motion.
While it is established that Delaware stockholders absent a unanimous vote may not ratify fraud and in effect make a gift of corporate assets, Eshleman v. Keenan, 21 Del.Ch. 259, 187 A. 25, affirmed 23 Del.Ch. 234, 2 A.2d 904, 120 A.L.R. 227; Frankel v. Donovan, Del.Ch., 120 A.2d 311, here, as noted, this is no allegation of director fraud. In short, I am not satisfied from a reading of the complaint and other papers of record that plaintiffs are entitled at this juncture to the broad type of order they now seek.
On notice an order will be entered denying plaintiffs' motion under Rule 34.
NOTES
[1] On May 27, 1957, prior to disposal of a motion to dismiss for failure to comply with Rule 23(b), Court of Chancery Rules, Del.C.Ann., in the case of Mayer v. Adams, Del.Ch., 133 A.2d 138, the Court directed that a pending motion to dismiss of the non-resident defendant, Reserve Mining Company, be argued prior to Mesabi's motion for summary judgment, and that was done. In its motion to dismiss Reserve seeks the release from sequestration of its 148,700 Mesabi shares which were seized to compel Reserve's appearance in this action. In the light of the preliminary conclusions reached in the Mayer case and in this opinion, decision on Reserve's pending motion will be reserved pending clarification of plaintiffs' standing to bring this derivative action.
[2] Inasmuch as the original arbitrators were avowedly partisans, and in the light of the provision as to a third arbitrator, I am of the opinion that the arbitration clause is not invalid per se particularly where the parties to the lease have acted under it, Petition of Dover Steamship Company, Inc., D.C.S.D.N.Y., 143 F.Supp. 738 and 3 Am.Jur. 918, Arbitration and Award, § 89.