IN THE MATTER OF THE ELECTION OF DIRECTORS AND OF CERTAIN OFFICERS OF THE A. A. GRIFFING IRON COMPANY.

Argued November 29, 1898—Decided December 19, 1898.

1.  (*a*) Companies organized under the General Corporation act are now governed by the revision of 1896 (*Pamph. L.*, *p.* 277).    (*b*) The stockholders of such a company may, at a special meeting, duly called for the purpose, increase the number of directors of the company by an amendment to the by-laws taking immediate effect.    (*c*) In the absence of other provision in the by-laws, it will then be the right and duty of the stockholders to elect the additional directors; the provisions of section 15 of the act, relating to the filling of vacancies by the board of directors, have no application to such a case.    (*d*) In the absence of other provision in the by-laws, such election should be held at a meeting subsequently called with due regard to sections 33 and 36 of the act.

2.  A special meeting of the stockholders of a company organized under the General Corporation act was duly called, on less than ten days' notice, to amend the by-laws of the company by increasing the number of directors and to elect those that should be added.    At the meeting every share of stock in the company was represented and voted on and the by-laws were so amended.    The additional directors were then chosen by the votes of a majority in number and interest of all the stockholders, the minority stockholders refusing to vote.    No stock had been transferred within twenty days next preceding the meeting. *Held,* on summary inquiry under said act (*Rev.* 1896, § 42), that, notwithstanding its informality, such election would not be disturbed.

3.  The ministerial officers of a corporation not holding for fixed terms under statute or by-laws may be removed by the body that chose them. *Quœre.* Does the power of this court of summary inquiry into corporate elections extend beyond elections by stockholders?

On application to set aside election of directors and officers.

Upon a summary hearing, under section 42 of "An act concerning corporations (Revision of 1896)" (*Pamph. L., p.* 277), the affidavits and proofs of the parties present the following pertinent facts:

The A. A. Griffing Iron Company was organized February 6th, 1881, under the General Corporation act of 1875. *Gen. Stat., p.* 904. In the by-laws adopted by the stockholders it was, among other things, provided that there should be a board of five directors, to be elected by ballot at the annual meeting in May and to hold office for one year and until their successors should be elected; that the directors should elect a president from their own number, and, among other officers, a treasurer, who should be a stockholder and might be a member of the board; that any vacancy in the board or in the office of treasurer should be filled by the board for the unexpired term; that special meetings of the stockholders might be called at any time by one or more of the board of directors on three days' notice, in writing, personally or by mail, to all the stockholders, and that the notice of such meeting should specify the business to be transacted. These by-laws authorized and regulated amendment thereof by the board of directors.

In May, 1898, at the annual meeting of the company, Thomas H. Williams, Samuel D. Tompkins, George W. Conklin, Edward S. Griffing and Charles F. Imbrie were elected directors and are still in office. This board elected Mr. Williams president and Mr. Tompkins treasurer for one year, with salaries as during the preceding year.

On November 18th, Messrs. Griffing and Imbrie called a special meeting of stockholders for November 23d at the principal office of the company in this state, giving notice, among other things, of a purpose to transact business as follows:

1. To amend the by-laws by substituting for one of those above cited the following, viz.: "The business of this corporation shall be conducted by a board of nine directors, who shall be elected by ballot at the annual meeting or at any

special meeting of the stockholders called for that purpose; such directors shall hold office for one year and until their successors are elected." * * *

2. To amend the by-laws by inserting the following, viz.: "The president, * * * treasurer * * * and any officer of the company may be removed by the directors at any meeting of the board of directors."

3. To amend the by-laws by substituting for one of those above cited the following, viz.: "In case of vacancy in the board of directors or in the office of president, * * * treasurer * * * or any officer of the company the directors shall fill the vacancy for the unexpired term."

4. To elect four or more directors of the company.

5. To provide funds and transact other proper business.

At such special meeting, Mr. Williams, protesting that the notice was insufficient and that the by-laws could only be amended in the manner therein provided, nevertheless presided and the business noticed was taken up. The entire stock of the company consists of three thousand shares, in thirty separate holdings. Every share was represented at the meeting, and by a vote of one thousand five hundred and sixty-six shares in twenty-two holdings, as against one thousand four hundred and thirty-four shares in eight holdings, the by-laws were amended conformably to said notice. Thereupon the stockholders, despite objection, proceeded at once to elect four new directors. Abner A. Griffing, James L. Ogden, Isaac C. Ogden and John H. Armstrong were chosen by votes cast on the same one thousand five hundred and sixty-six shares of stock, the other shares not being voted. A recess was taken in order to afford an opportunity for a directors' meeting. Messrs. Griffing and Imbrie had, on November 18th, called a special meeting of the board of directors to be held immediately after the stockholders' meeting, and, together with the newly-elected directors, they organized such a meeting and by resolution removed Mr. Williams and Mr. Tompkins from their respective offices and elected to fill the vacancies, Abner A. Griffing president and

Edward S. Griffing treasurer. The other directors refused to participate in this meeting. On re-assembling, the stockholders, by a vote of the same one thousand five hundred and sixty-six shares, ratified the action of the directors.

In the pending proceeding, Messrs. Williams, Tompkins and Conklin, as stockholders and directors, challenge the election of the four additional directors, and the two officers also challenge the election of the persons claiming to succeed them respectively.

Before Justices LUDLOW and COLLINS.

For the applicants, *James B. Vredenburgh* and *Allan L. McDermott.*

*Contra, William D. Edwards* and *Charles L. Corbin.*

The opinion of the court was delivered by

COLLINS, J. The organic law of the A. A. Griffing Iron Company subjected that corporation to the control of the legislature. Sections 14, 35. Therefore, we are now to look to the revision of 1896 of the Corporation act for its regulation. Section 1 of that statute enacts that every corporation shall have power to make by-laws fixing and altering the number of directors and providing for the management of its property and the regulation and government of its affairs. Section 2 enacts that the power to make and alter by-laws shall be in the stockholders. It is clear, therefore, that the amendment of November 23d, 1898, increasing the number of directors was legal. That the stockholders had delegated to the directors power to amend the by-laws did not curtail their own power to amend them, and of course the later statute removed all possible restriction on such power. The protest read at the stockholders' meeting was, therefore, unavailing in this regard. Insufficiency of notice was alleged, but no defect was pointed out or has been proved. As every share of stock was represented and voted on at the meeting, no irregularity should be considered.

*Handley* v. *Stutz,* 139 *U. S.* 417. The amendments must stand.

It is argued that the increase of directors should not be held to have had immediate effect; that, under the provisions of section 12 of the statute, directors must be chosen for at least a year and the argument is not only that the individual directors, but that the board as constituted at the time of election, hold for a year, not subject to change in the composition of the board. It is not denied that, where the by-laws permit special meetings, there may be an alteration in the number of directors, at any such meeting, but it is claimed that such alteration becomes effectual only at the next annual election. We are referred to numerous decisions that, in the absence of fraud or abuse of trust, stockholders must submit to the control of a corporation by its directors during their term of office. These decisions all relate to collateral attack. They have no reference to direct action of the stockholders taken by legitimate and orderly methods. The right to take such action is inherent, though generally declared and directed by statute. *Thomp. on Corp.,* § 3972. It would be preposterous to leave the real owners of the corporate property at the mercy of their agents, and the law has not done so. Our statute authorizes action by the stockholders under by-laws subject to alteration. Special meetings of the stockholders may be held under the by-laws, or, in case of necessity, under the statute. Sections 1, 2, 17, 46. If the by-laws so warrant directors may even be removed during their term. In *Imperial Hydropathic Hotel Co.* v. *Hampson,* 23 *Ch. D.* 1, it was held that without such warrant in the articles of association the directors of a joint stock company could not be removed except for cause; but Sir George Jessel, the learned Master of the Rolls, said that under a clause in the articles of association, authorizing amendments, it was competent for the stockholders to pass a clause enabling them to remove the directors and then act upon it. From the time of the adoption of the amendments, therefore, the stockholders were entitled to have nine directors in the board.

How should the four new places have been filled pending the next annual election ?   Counsel for these applicants submit and cite authority, that newly-created offices are " vacant ; " and they contend that under the statute and the by-laws of the company the power to fill vacancies is in the directors.   The provision of the statute is in section 15, which reads as follows: "Any vacancy occurring *among the directors* or in office of president, secretary or treasurer by death, resignation, removal or otherwise, shall be filled in the manner provided for in the by-laws ; in the absence of such provision such vacancies shall be filled by the board of directors." This language is inappropriate to a directorship newly created.  The filling up of a board whose membership is enlarged seems to be left to the creating body, that is, the stockholders.   In the absence of express provision there is implied power in the stockholders to do everything necessary to effectuate the corporate functions.   *Thomp. on Corp.*, §§ 5641, 5642.   The by-law of this company above cited is based on the statute and is even more inappropriate to a newly-created directorship, for the reference to an " unexpired term " presupposes a previous incumbent. We think it clear that under the amended by-laws it became the right and duty of the stockholders to elect the additional directors, and that they could do so at a special meeting called for that purpose.   The form of notice of such a purpose, that was given in this case, is criticised ; but we think it was intended, and must have been understood, to be a notice that if the proposed increase in the number of directors should be authorized, the election of the new directors would be forthwith moved.   I have doubt of the strict propriety of that mode of procedure.   Until the amendment there could be no election at a special meeting, and an anticipatory call for such a meeting for the purpose of an election would be incongruous to say the least.   As a bare majority of a quorum of stockholders may alter the by-laws of a corporation it would seem but fair to require that an election authorized by amendment should be held at a subsequent meeting, called upon notice to every stockholder.   In fixing the time for such a meeting, re-

gard should be had to certain provisions of the statute that may be applicable even to special elections of the character of that in question. Section 36 disentitles, to be voted on, any stock transferred on the book of the company within twenty days next preceding an election, and section 33 directs that a l st of stockholders shall be prepared and held open for inspection for at least ten days before every election of directors after the first. It does not appear before us that any stock had been transferred within twenty days before the challenged election and I speak of that subject by way of suggestion only. Section 33 is all that need now be considered. Of course, under less than ten days' notice, to amend by-laws and elect directors, the stockholders could not have the time given by that section to inspect a prepared list of stockholders; but that fact should not in a proceeding like the present avail to defeat an election clearly expressive of the will of the stockholders. Every share of stock was represented at the meeting and a majority both in number and in interest, of all the stockholders, voted for the directors whose title is assailed, and still acquiesce in the result; and it would be captious in this court to order a new election for mere formality's sake. In *Downing* v. *Potts*, 3 *Zab.* 66, Chief Justice Green held that the provisions of the statute, now section 33 of the Corporation act, were directory only; and he used this language concerning the jurisdiction we are now exercising, then exercised under a separate law: "By the seventh section of the act this court are required to inquire into the matters or causes of complaint, and thereupon to establish the election complained of, or order a new election or make such order and give such relief in the premises as right and justice may appear to require. The court are not to avoid an election merely because a technical error has been committed or the provisions of the act not strictly complied with, unless there is reason to apprehend that the fairness of the election has been impaired or the claims of right and justice defeated." The spirit of this ruling constrains us to leave undisturbed the challenged election of directors.

Nor can we disturb the election of president and treasurer complained of. There is great doubt of our jurisdiction to do so. The original statute now blended in the General Corporation act under which such jurisdiction is invoked, seems to me clearly limited to elections by stockholders. *Pamph. L.* 1825, *p.* 81 ; *Harr. Comp.*, *p.* 122. I find little ground to extend its operation because of its present collocation. Although, the word " election " is used in the by-laws of this company with reference to the choice of officers by the directors, it is never directly so used in the statute itself. The Supreme Court of California has held that in that connection the word is a misnomer, the choice really being made by appointment, and upon that ground has refused to take jurisdiction under a statute like ours directing a summary inquiry into corporate elections. *Wickersham* v. *Brittan,* 93 *Cal.* 34. Mr. Justice Ingraham, in the Supreme Court of New York, made like decision. *Re Cagney, N. Y. Law Jour.* (September 15th, 1891). But if we have jurisdiction we see no infirmity in the election. Its validity, of course, can be questioned only if there was invalidity in the removal of the former incumbents, for there can be no doubt of the power of the directors to fill vacancies caused by removal. The statute recognizes a power of removal (section 15), and such power is indeed inherent. If there be a fixed term of office removal must be for cause, but otherwise, unless limited by statute or by-law, the power to remove ministerial officers is absolute, in the body that elects, subject only to a right of action if there be a breach of contract of employment. *Thomp. on Corp.*, §§ 804, 805, 820. The president of a corporation has no securer tenure than any other ministerial officer. *Id.*, § 4611. Our statute (section 13) simply provides that every corporation organized thereunder shall have a president, secretary and treasurer who shall be chosen either by the directors or stockholders as the by-laws may direct, and shall hold their offices until others are chosen and qualified in their stead. The by-laws of the Griffing company directed that the directors should choose these officers, but fixed no term of office, and at the meeting of November

23d were amended so as to give express power of removal. Such an amendment has been judicially upheld in this state. *Weinburgh* v. *Union, &c., Advertising Co.,* 10 *Dick. Ch. Rep.* 640. The stockholders ratified the removal made under this authority.

The attempt of the directors in May, 1898, to fix a term of one year for the president and treasurer was certainly ineffectual to create any franchise. It was probably ineffectual as a contract, but, if not, the remedy for a breach is by an action for damages.

The application to set aside these elections is denied, with costs.