## ROGERS *v.* HILL ET AL.

No. 732.  Argued May 11, 1933.—Decided May 29, 1933.

*Mr. Richard Reid Rogers,* with whom *Mr. Evan Shelby* was on the brief, for petitioner.

*Mr. Nathan L. Miller,* with whom *Messrs. Wm. M. Parke* and *J. Arthur Leve* were on the brief, for respondents.

Mr. Justice Butler delivered the opinion of the Court.

The American Tobacco Company is a corporation organized under the laws of New Jersey. The petitioner, plaintiff below, acquired in 1916 and has since been the owner of 200 shares of its common stock. He also has 400 shares of common stock B. In accordance with by-law XII,[1] adopted by the stockholders at their annual meeting, March 13, 1912, the company for many years has annually paid its president and vice-president large

[1] Section 1. As soon as practicable after the end of the year 1912 and of each year of the Company's operations thereafter, the Treasurer of the Company shall ascertain the net profits, as hereinafter defined, earned by the Company during such year, and if such net profits exceed the sum of $8,222,245.82, which is the estimated amount of such net profits earned during the year 1910 by the businesses that now belong to the Company, the Treasurer shall pay an amount equal in the aggregate to ten per cent of such excess to the President and five Vice-Presidents of the Company in the following proportions, to wit: One-fourth thereof, or 2½ per cent of such amount, to the President; one-fifth of the remainder thereof or 1½ per cent of such amount, to each of the five Vice-Presidents as salary for the year, in addition to the fixed salary of each of said officers. . . .

Section 3. For the purpose of this By-Law the net profits earned by the Company in any year shall consist of the net earnings made by the Company in its business as a manufacturer and seller of tobacco and its products after deducting all expenses and losses, such provisions as shall be determined by the Board of Directors of the Company for depreciation and for all outstanding trade obligations, and an additional amount equal to 6 per cent dividends on $52,459,400 of its 6 per cent preferred stock, to which profits shall be added, or from which profits shall be deducted, as the case may be, the Company's proportion (based on its stock holdings) of the net profits or losses for the year of its subsidiary companies engaged in the manufacture and sale of smoking tobacco, chewing tobacco, cigarettes, or little cigars, except earnings on preference shares of British-American Tobacco, Limited, and shares of Imperial Tobacco Company (of Great Britain and Ireland), limited. . . .

Section 5. This By-Law may be modified or repealed only by the action of the stockholders of the Company and not by the directors.

amounts in addition to their fixed salaries ahd other sums allowed them as compensation for services.[2]

Plaintiff maintains that the by-law is invalid and that, even if valid, the amounts paid under it are unreasonably large and therefore subject to revision by the courts. In March, 1931, he demanded that the company bring suit against the officers who have received such payments to compel them to account to the company for all or such part thereof as the court may hold illegal. The company, insisting that such a suit would be without basis in law or fact, refused to comply with his demand. He brought suit in the supreme court of New York against the president and some of the vice-presidents to require them so to account, and joined the company as defendant. The case was removed to the federal court for the southern district of New York. In May, 1931, plaintiff brought suit in that court against Taylor, a vice-president, not a

[2] The statement below shows for the years specified the amounts alleged to have been paid by the company to the named defendants as salary, credits, and under by-law XII.

| | Salary | Cash Credits | By-Law | |
|---|---|---|---|---|
| **Hill** | | | | |
| 1921 | | | $89, 833. 94 | Vice President |
| 1922 | | | 82, 902. 61 | |
| 1923 | | | 77, 336. 54 | |
| 1924 | | | 88, 894. 26 | |
| 1925 | | | 97, 059. 38 | |
| 1926 | $75, 000 | | 188, 643. 45 | President |
| 1927 | 75, 000 | | 268, 761. 45 | |
| 1928 | 75, 000 | | 280, 203. 68 | |
| 1929 | 144, 500 | $136, 507. 71 | 447, 870. 30 | |
| 1930 | 168, 000 | 273, 470. 76 | 842, 507. 72 | |
| **Neiley** | | | | |
| 1929 | $33, 333. 32 | $44, 897. 89 | $115, 141. 87 | |
| 1930 | 50, 000. 00 | 89, 945. 52 | 409, 495. 25 | |
| **Riggio** | | | | |
| 1929 | $33, 333. 32 | $45, 351. 40 | $115, 141. 86 | |
| 1930 | 50, 000. 00 | 90, 854. 06 | 409, 495. 25 | |

defendant in the earlier suit, to require him to account and made the company defendant. The cases were consolidated, plaintiff filed an amended complaint and defendants answered. The officers of the company now before the court are Hill, the president, Neiley, Riggio and Taylor, vice-presidents. The answer, after admissions, denials and explanations asserts several separate defenses.

Plaintiff made a motion on the pleadings for judgment that the separate defenses be stricken, the by-law be adjudged invalid and defendants Hill, Neiley and Riggio be required to account for amounts so paid them and that further payments be enjoined; and in the alternative that such payments be restrained *pendente lite*. After argument upon the motion, the court, without decision upon any other question, granted a temporary injunction. Defendants appealed, the Circuit Court of Appeals reversed the interlocutory order and directed that a mandate issue to the District Court " in accordance with this decree." See 60 F. (2d) 109. The mandate directed further proceedings in accordance with "the decision." On the coming down of the mandate, the district court vacated the temporary injunction and dismissed the bills of complaint upon the merits. Plaintiff appealed, the Circuit Court of Appeals affirmed, 62 F. (2d) 1079, citing its opinion on the former appeal, and this court granted plaintiff's petition for writ of certiorari.

Defendants, renewing a contention made in opposition to the petition for certiorari, assert that the appellate court on the first appeal determined in favor of defendants all the issues presented by the complaint, and maintain that, no application for certiorari having been made within three months after that decision, the only question that this court now has power to decide is whether the mandate directed dismissal.

We are of opinion that the mandate did not direct dismissal. The granting of temporary injunction involved

no determination of the merits. Such a decree will not be disturbed on appeal except for improvident allowance, violation of the rules of equity or abuse of discretion. *National Fire Ins. Co.* v. *Thompson*, 281 U.S. 331, 338. *Meccano, Ltd.* v. *John Wanamaker*, 253 U.S. 136, 141. *Smith* v. *Vulcan Iron Works*, 165 U.S. 518, 526. The opinion of the Circuit Court of Appeals did indeed deal with matters affecting the merits, but the decree did not extend beyond mere reversal of the order from which the appeal was taken. It directed that mandate issue in accordance with " this decree." The mandate commanded proceedings in accordance with " the decision." A direction for proceedings in accordance with " the opinion " makes it a part of the mandate. *Gulf Refining Co.* v. *United States*, 269 U.S. 125, 136. Here the mandate was to proceed not in accordance with the " opinion " but with the " decision." These words, while often loosely used interchangeably, are not equivalents. The court's decision of a case is its judgment thereon. Its opinion is a statement of the reasons on which the judgment rests. *Houston* v. *Williams*, 13 Cal. 24, 27. *Adams* v. *Yazoo & M. V. R. Co.*, 77 Miss. 194, 304; 24 So. 200, 317; 28 So. 596. *Craig* v. *Bennett*, 158 Ind. 9, 13; 62 N.E. 273. *Coffey* v. *Gamble*, 117 Iowa 545, 548; 91 N.W. 813. The Judicial Code uses " decision " as the equivalent of " judgment " and " decree." §§ 128, 238. As a mandate in the words of the decree was unquestionably sufficient to give effect to the ruling of the appellate court, " decision " may not reasonably be held to have been used for " opinion."

Moreover, if the court intended to direct dismissal, it is to be presumed that it would have done so unequivocally and directly by means of language, form of decree and mandate generally employed for that purpose. But, assuming it included the opinion, the mandate would not prevent the district court in the exercise of a sound dis-

cretion from allowing plaintiff, were adequate showing made, to file additional pleadings, vary or expand the issues and take other proceedings to enforce the accounting sought by his bills of complaint. *Wells Fargo & Co.* v. *Taylor*, 254 U.S. 175, 182. *Metropolitan Water Co.* v. *Kaw Valley District*, 223 U.S. 519, 523. *Mutual Life Insurance Co.* v. *Hill*, 193 U.S. 551, 553. *Smith* v. *Adams*, 130 U.S. 167, 177. In any view of the matter, it is clear that the decree of the appellate court was not final and that plaintiff, in order to have the validity of the payments considered here, was not bound within three months after entry to petition this court for a writ of certiorari.

Plaintiff contends that the stockholders were not authorized to adopt the by-law under which the payments were made.

Section 11, General Corporation Act, Laws, 1896, c. 185, provides: "The power to make and alter by-laws shall be in the stockholders, but any corporation may, in the certificate of incorporation, confer that power upon the directors; by-laws made by the directors under power so conferred may be altered or repealed by the stockholders." The charter empowers the directors to make and alter by-laws. But plaintiff argues that the stockholders having delegated to the directors authority to adopt by-laws lost the power to adopt the one in question. That is inconsistent with the purpose of the statute. Power to prescribe rules for the government of business corporations reasonably is deemed an incident of ownership and the voting power of the shares. It is quite generally conferred by statute or charter provisions upon the stockholders. Here the statutory grant to them is plenary. The charter provision is subordinate and not inconsistent. There are many thousand holders of shares of this corporation. Their annual meetings are the only regular

ones, but the directors meet frequently. The company's business is extensive and complex and considerations of convenience may have suggested delegation to directors of authority to make and alter by-laws.

That the statute did not intend to divest stockholders is clear; for it expressly makes by-laws passed by directors subject to alteration and repeal by the stockholders. In the absence of statutory provision definitely and clearly disclosing that intention, a charter provision, or by-law adopted by incorporators or shareholders, delegating power to directors, may not reasonably be held to take from the stockholders any of the power conferred upon them by the statute. Plaintiff's contention would leave the stockholders full power to alter and repeal by-laws made by directors, but would deny them power to originate or adopt any by-law or to amend or repeal those made by themselves. We find no reason in support of that construction. Moreover, it seems in direct conflict with the decision of the highest court of New Jersey. In the case of *Griffing Iron Co.*, 63 N.J.L. 168; 41 Atl. 931, affirmed in the Court of Errors and Appeals on the opinion below, 63 N.J.L. 357; 46 Atl. 1097, the court declared (p. 171): ". . . That the stockholders had delegated to the directors power to amend the by-laws did not curtail their own power to amend them, and of course the later statute [Revision, 1896] removed all possible restriction on such power . . .. It would be preposterous to leave the real owners of the corporate property at the mercy of their agents, and the law has not done so." The plaintiff cites and quotes from *Scott v. P. Lorillard Co.*, 108 N.J.Eq. 153; 154 Atl. 515, affirmed 109 N.J.Eq. 417; 157 Atl. 388. But, when regard is had to the questions considered in that case, there is nothing in the opinion that lends support to his contention. It cannot be sustained.

Plaintiff suggests that, because the by-law purports to direct payments out of profits, it violates charter provisions which he construes to require the directors to apply all profits to the acquisition of property and the payment of dividends. We need not examine the charter, for the contention rests upon a misapprehension of the meaning of " profits " as used in the by-law. As there defined it includes the sums to be paid to the president and vice-presidents. Compensation to an officer for his services constitutes a part of operating expenses deductible from earnings in order to ascertain net profits. It is immaterial whether such compensation is a fixed salary or depends in whole or in part upon earnings. There is no conflict between the charter and the by-law. *Bennett* v. *Millville Improvement Co.,* 67 N.J.L. 320, 323; 51 Atl. 706. *Booth* v. *Beattie,* 95 N.J.Eq. 776; 118 Atl. 257; 123 Atl. 925.

It follows from what has been shown that when adopted the by-law was valid. But plaintiff alleges that the measure of compensation fixed by it is not now equitable or fair. And he prays that the court fix and determine the fair and reasonable compensation of the individual defendants, respectively, for each of the years in question. But the allegations of the complaint are not sufficient to permit consideration by the court of the validity or reasonableness of any of the payments on account of fixed salaries, or of special credits, or of the allotments of stock therein mentioned. Indeed, plaintiff alleges that other proceedings have been instituted for the restoration of special credits, and his suits to invalidate the stock allotments were recently considered here. *Rogers* v. *Guaranty Trust Co.,* 288 U.S. 123. The only payments that plaintiff by this suit seeks to have restored to the company are the payments made to the individual defendants under the by-law.

We come to consider whether these amounts are subject to examination and revision in the district court. As the amounts payable depend upon the gains of the business, the specified percentages are not *per se* unreasonable. The by-law was adopted in 1912 by an almost unanimous vote of the shares represented at the annual meeting and presumably the stockholders supporting the measure acted in good faith and according to their best judgment. The tabular statement in the margin shows the payments to individual defendants under the by-law. Plaintiff does not complain of any made prior to 1921. Regard is to be had to the enormous increase of the company's profits in recent years. The 2½ per cent. yielded President Hill $447,870.30 in 1929 and $842,507.72 in 1930. The 1½ per cent. yielded to each of the vice-presidents, Neiley and Riggio, $115,141.86 in 1929 and $409,495.25 in 1930 and for these years payments under the by-law were in addition to the cash credits and fixed salaries shown in the statement.

While the amounts produced by the application of the prescribed percentages give rise to no inference of actual or constructive fraud, the payments under the by-law have by reason of increase of profits become so large as to warrant investigation in equity in the interest of the company. Much weight is to be given to the action of the stockholders, and the by-law is supported by the presumption of regularity and continuity. But the rule prescribed by it cannot, against the protest of a shareholder, be used to justify payments of sums as salaries so large as in substance and effect to amount to spoliation or waste of corporate property. The dissenting opinion of Judge Swan indicates the applicable rule: " If a bonus payment has no relation to the value of services for which it is given, it is in reality a gift in part and the majority stockholders have no power to give away corporate prop-

erty against the protest of the minority." '60 F. (2d) 109, 113. The facts alleged by plaintiff are sufficient to require that the district court, upon a consideration of all the relevant facts brought forward by the parties, determine whether and to what extent payments to the individual defendants under the by-law constitute misuse and waste of the money of the corporation. *Booth* v. *Beattie,* 95 N.J.Eq. 776; 118 Atl. 257; 123 Atl. 925. *Scott* v. *P. Lorillard Co.,* 108 N.J.Eq. 153, 156; 154 Atl. 515; affirmed 109 N.J.Eq. 417; 157 Atl. 388. *Nichols* v. *Olympic Veneer Co.,* 139 Wash. 305, 311; 246 Pac. 941. *Collins* v. *Hite,* 109 W.Va. 79, 84; 153 S.E. 240. *Putnam* v. *Juvenile Shoe Corp.,* 307 Mo. 74, 91 *et seq.;* 269 S.W. 593. *Stratis* v. *Andreson,* 254 Mass. 536, 539; 150 N.E. 832. *Lillard* v. *Oil, Paint & Drug Co.,* 70 N.J.Eq. 197, 206–209; 56 Atl. 254; 58 Atl. 188. *Wight* v. *Heublein,* 238 Fed. 321, 324. *Seitz* v. *Union Brass & Metal Mfg. Co.,* 152 Minn. 460, 464; 189 N.W. 586. *Sotter* v. *Coatesville Boiler Works,* 257 Pa. 411, 422–423; 101 Atl. 744.

The separate defenses set up in the answer to the amended complaint are: failure of plaintiff to comply with Equity Rule 27, ratification, forum *non conveniens,* laches, and that the payments were justified. As they were not passed on below, we refrain from expressing opinion concerning them. The decree of the Circuit Court of Appeals is reversed, the decree of the district court dismissing the bills on the merits is vacated, and the case is remanded to the district court with directions to reinstate its decree granting injunction *pendente lite* and for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.