## NEMSER v. AVIATION CORPORATION.
### Civil Action No. 253.

District Court, D. Delaware.

Oct. 6, 1942.

---

[4] 49 U.S.C.A. § 16(2).

[6] 49 U.S.C.A. § 9.

516

Ivan Culbertson, of Wilmington, Del., and Edmund J. Fixman, of New York City, for plaintiff.

William S. Potter and William Poole (Southerland, Berl & Potter), all of Wilmington, Del., and H. Preston Coursen, of New York City, for defendant.

LEAHY, District Judge.

Plaintiff seeks to enjoin defendant from putting into effect two plans for compensation of employees. Defendant has moved to dismiss the complaint.

After the filing of the complaint, the stockholders of defendant corporation met and approved both plans, but the Board of Directors has abandoned the so-called Extra Compensation Annuity Plan. We are interested solely, therefore, in the question of the validity of the Contributory Pension Plan, which will be referred to herein as "the Plan."

Defendant's present motion, filed pursuant to Rule 12 of the Rules of Civil Procedure, is predicated upon three deficiencies in the complaint: (1) There is no specific allegation of the absence of an adequate remedy at law; (2) there is no specific allegation of "irreparable injury"; and (3) there are no allegations of fact substantively sufficient to state a cause of action.

The first two grounds may be disposed of with dispatch. Equity pleading does not require that the bill of complaint contain an allegation, in haec verba, that "plaintiff has no adequate remedy at law." Town of Mentz v. Cook, 108 N.Y. 504, 15 N.E. 541; Pine Cliffs Farms, Inc., v.. Collier, 92 Misc. 269, 156 N.Y.S. 293; Story on Equity Pleading, 10th Ed., sec. 34, also p. 30, footnote 4; and 30 C.J.S., Equity, § 213. Likewise, the words "irreparable injury" need not be alleged in haec verba. Mitchell v. Burnett, 57 Tex.Civ.App. 124, 122 S.W. 937; 32 C.J.Injunctions, § 543. Hence, I conclude that the first two reasons offered in support of the motion to dismiss are without merit.

The third ground of the motion, going to the substance of the right of action, calls for more deliberate consideration and a careful scrutiny of the Plan.

The Plan provides that employees who receive a base salary of $4,200 or more per year from defendant or American Propeller Corporation, a wholly owned subsidiary, are entitled to retirement income at age 65, if

male, and at age 60, if female, provided they have made monthly contributions, varying in amount according to salary, up to the retirement age.[1] Defendant is to contribute whatever additional amounts are necessary to purchase the indicated annuity for each employee.[2]

The complaint states: "The said two plans constitute a waste and dissipation of the corporation's present and future monies in that they bear no relation whatsoever to the nature, character or extent of the services rendered or to be rendered by the beneficiaries under the said two plans. The said Contributory Pension Plan is further unfair and inequitable in that its beneficiaries are limited to those officers and employees receiving the higher bracket of incomes in that its provisions are available to officers and employees whose base salaries exclusive of overtime, bonus or other contingent compensation is at the rate of $4200 or more per annum." The plaintiff contends that the Plan read in conjunction with the quoted allegation constitutes a proper statement of a cause of action, in that the Plan, per se, shows an alleged threatened waste of defendant's assets and is therefore unlawful.

■ Corporate pension plans provide a legitimate method of giving employees compensation in addition to their basic salaries. Beck v. Pennsylvania R. Co., 63 N.J.L. 232, 43 A. 908, 76 Am.St.Rep. 211. It is essential, however, that the payments bear some relation to the value of the services rendered by the employee. Otherwise they would constitute a gift, and not even the majority of the stockholders have the right to make gifts over the protest of even a small minority. Rogers v. Hill, 289 U.S. 582, 591, 592, 53 S.Ct. 731, 77 L.Ed. 1385, 88 A.L.R. 744; Heller v. Boylan, Sup.Sp.T., 29 N.Y.S.2d 653, 666; Winkelman v. General Motors Corp., D.C., 39 F.Supp. 826, 833, 834; Scott v. P. Lorillard Co., 108 N.J.Eq. 153, 154 A. 515, affirmed 109 N.J. Eq. 417, 157 A. 388.

Plaintiff argues, therefore, that the Plan is unlawful in that the benefit ultimately derived by an employee under the Plan depends upon his age either at the date of inception of the Plan or at the date of employment. He states in his brief: "Experience can never be said to have taught that a man 50 years of age, is necessarily more valuable to a corporation than a man 49 years old, or indeed 20 years old. There are too many corporate employees in younger age groups who receive higher salaries and are placed in more responsible positions than employees in older age groups to permit of any general guide, whereby older employees will be preferred above younger ones for that reason alone, and apart from any other consideration, such as length of service. It can never be said that the employees' compensation under the Plan is a function of the employment or is in any manner related to the employment. The amounts contributed by the Corporation are determined by a factor entirely foreign to the employment and it is, therefore, submitted that under the authorities this Plan must be deemed unlawful."

The plaintiff suggests a suppositious case by way of illustration. Mr. Able started years ago as an officeboy. Now, at forty-four years of age, he is an officer of defendant drawing a base salary of $50,000. His work is excellent. The defendant will contribute $99,371.66 for the purchase of his annuity which will yield annual payments of $14,250. Another officer, Mr. Mediocre, likewise receives a base salary of $50,000. But, although he has been with the company for only one year, he is fifty-four

---

[1] Contributions and retirement income under the Plan are as follows:

| Salary Class | Range of Annual Salary | Monthly Contribution | Annual Retirement Income |
|---|---|---|---|
| 1 | $4200 to $4999 | $ 7.50 | $ 450 |
| 2 | $5000 — 5999 | 12.50 | 750 |
| 3 | $6000 — 6999 | 17.50 | 1,050 |
| 4 | $7000 — 7999 | 22.50 | 1,350 |
| 5 | $8000 — 8999 | 27.50 | 1,650 |
| 6 | $9000 — 9999 | 32.50 | 1,950 |
| Etc.—Increasing by increments of | $1000 | $ 5.00 | $ 300 |

[2] According to estimate, the annual contributions by employees will amount to $26,850, and the corporation's annual contributions will amount to approximately $76,960.

years of age. Under the Plan, the corporation will contribute $155,712.59 toward his $14,250 annuity. This is $56,341.43 more than defendant will contribute for Mr. Able, although Mr. Mediocre is a less valuable employee than the younger man. While Mr. Able will be required to contribute as his share the sum of $59,850, Mr. Mediocre will be called on to contribute a mere $31,-350. Mr. Mediocre will have to work only eleven more years before he receives his pension. Mr. Able has to continue in the employ of the corporation for twenty-one more years. That situations such as this are inherent in the Plan cannot be denied. Should it for that reason be condemned?

The permissible purpose of this Plan is to give to employees, sufficiently valuable to be receiving a salary of $4,200 or more, the security that comes from knowing that when they reach age 65 they will continue to receive an income. It, in effect, extends privately the public policy of the federal social security laws to the higher paid employee who falls into the class of the "managers" rather than into the class of "workers." Certain apparent inequities are bound to arise in such a plan.[3] The reward to one may be disproportionate to the reward to another with a longer period of service with the company, but the mere failure to base the reward upon the length of services is not sufficient to condemn the plan. In fact, if the age factor were eliminated, and the amount of the reward were determined by the length of past services alone, I have grave doubt if the plan would be valid because the consideration supplied by the employee who is to receive the pension would be largely, if not completely, in the past, and such payments would constitute a gift. The pension contemplated by the present plan has, I believe, a reasonable relation not only to the value of the services rendered in the past but also to be rendered in the future. The plan has, in fact, a definite relation to salary, and to this extent it is a mere form of deferred compensation. Certainly the plan aims to create an incentive among all the covered employees. In short, I am unable to find how the plan could constitute an over-reaching of the minority stockholders.

In Diamond v. Davis, —— Misc. ——, 38 N.Y.S.2d ——, the Court said: "Where the services are of value and are so recognized, in the absence of statutory provision or decision to the contrary, stockholders and directors acting in good faith may grant a bonus, or an option, to a valuable officer, by which a proprietary interest may be purchased by him or any employee so favored, at a price fixed in the agreement, as an incentive to retain his services, sharpen his interest, intensify his zeal, spur him on to more ardent effort in the interest and for the benefit of the company, and to enable him thereby to share in the resulting success of the enterprise."

In a recent treatise on the subject of compensation,[4] Professor George T. Washington states (p. 133): "A corporation, through its board of directors, certainly can hire officers and employees at a reasonable compensation; certainly, too, this compensation need not be paid at once, if the employee chooses to receive it at some later time. A pension may be merely deferred compensation, in the sense just indicated. If it is simply that, the corporation's power to grant it seems clear. A 'future service' pension plan, which takes effect upon the employee's entrance into employment or at some time prior to the termination of his employment, and under which the size of the pension is directly and reasonably related to the extent of future services to be rendered while the plan is in operation, is certainly valid, and so the cases hold."

Plaintiff vainly seeks comfort from the statement of Vice-Chancellor Bigelow in Scott v. P. Lorillard Co., 108 N.J.Eq. 153, 154 A. 515: "For instance, officers and employees might participate in a bonus in proportion to their salaries, or the length of their service with the corporation, or in accordance with the quality of their work or the results produced by them, or in some other manner related to the employment." This statement does not purport to be a catalogue of all the factors upon which a plan may be based; and obviously, it cannot be construed to mean that all of the factors mentioned must be present. To construe "or" to mean "and" does violence to the

---

[3] Cf. Haldeman v. Hillegass, 335 Pa. 375, 6 A.2d 801, where a county officer retired three days after a pension plan went into effect and was nevertheless held entitled to benefits thereunder.

[4] Professor Washington's book, "Corporate Executives' Compensation" (Ronald Press Co., N. Y. 1942), is the most comprehensive and exhaustive treatise available on the subject.

Vice-Chancellor's meaning. Further, the case is palpably not in point. The bonus plan there—it was not a pension plan—was held illegal because the employees were eligible to participate only if they owned a certain portion of the capital stock of the company. As the court succinctly stated: "Such a bonus is not compensation for services; it is a dividend upon capital."

■ Endeavoring to follow the edict of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, I have examined the Delaware law. There is no decisional law in point. However, I believe the situation here is controlled by the rule pronounced by Chancellor Wolcott in Davis v. Louisville Gas & Electric Co., 16 Del.Ch. 157, 142 A. 654, where he wrote: "We have then a conflict in view between the responsible managers of a corporation and an overwhelming majority of its stockholders on the one hand and a dissenting minority on the other—a conflict touching matters of business policy, such as has occasioned innumerable applications to courts to intervene and determine which of the two conflicting views should prevail. The response which courts make to such applications is that it is not their function to resolve corporate questions of policy and business management. The directors are chosen to pass upon such questions and their judgment unless shown to be tainted with fraud is accepted as final. The judgment of the directors of corporations enjoys the benefit of a presumption that it was formed in good faith and was designed to promote the best interests of the corporation they serve. * * * When the majority of the stockholders speak for the corporation upon extraordinary occasions as the directors do in the usual course of events, a like presumption in favor of the bona fides of their decision should prevail." Bodell v. General Gas & Electric Corp., 15 Del.Ch. 420, 140 A. 264; Allied Chemical & Dye Corp. v. Steel & Tube Co. of America, 14 Del.Ch. 1, 120 A. 486; Id., 14 Del.Ch. 64, 122 A. 142; and Robinson v. Pittsburgh Oil Refining Corp., 14 Del.Ch. 193, 126 A. 46, all recognize the same principle. In the light of my pervious discussion, I cannot find that the acts of the management of this corporation are so unfair to the minority as to be evidence of intentional wrong, which alone justifies the intervention of the court.

I cannot, of course, predict the future attitude of the courts on similar plans. In the preface to his recent work, Professor Washington says:[5] "* * * the country is at war. 'Business as usual' will cease. Effort and sacrifice, rather than rewards, will be foremost in our thoughts. In the choice of a compensation plan, and in the determination of many of the other questions here discussed, the public interest must become the dominant factor. As to the future, no one can speak with certainty. Strict regulation of managerial rewards may soon be here * * *."[6]

Such regulation is, however, not yet upon us. In the interim, a plan such as is here presented should have judicial sanction. Defendant's motion to dismiss the complaint will accordingly be granted.

■ This opinion was finished on October 2, 1942. The next day the President by executive order permitted the fixing of a salary ceiling of $25,000 a year. Under the executive order, it is quite likely that the plan is not now workable on an actuarial basis with respect to those employees heretofore receiving a salary in excess of $25,000 a year. Counsel for the parties are thus requested to inform me whether the situation is now changed, in view of the action of the President, because until I know this the judicial sanction of the plan which I have heretofore proposed must be withheld.

[5] Op. Cit., p. iii.
[6] Indeed, it is quite probable that either statutory or administrative controls of managerial rewards may soon be adopted as a war measure. Washington, op. cit. pp. 244–248.