SIDNEY C. KLEINMAN and JANICE R. KLEINMAN, Objectors-below, Appellants,

*vs.*

HYMAN SAMINSKY and BETTY SIEGEL, Trustee for Joan Siegel, Plaintiffs-below Appellees,

and

CHARLES C. ABBOTT et al., Defendants-below, Appellees.

*Supreme Court on Appeal, April 22, 1964.*

*Frank J. Miller*, of Walker, Miller & Wakefield, Wilmington, and *Arthur T. Susman*, Chicago, Ill., for objectors.

*William E. Taylor, Jr.*, Wilmington, and *Abraham L. Pomerantz* and *William E. Haudek*, of Pomerantz, Levy, Haudek & Block, New York City, for plaintiffs.

*James M. Tunnell, Jr.*, and *William S. Megonigal, Jr.*, of Morris, Nichols, Arsht & Tunnell, Wilmington, and *Alfred Jaretzki, Jr.*, and *Marvin Schwartz*, of Sullivan & Cromwell, New York City, for defendants.

TERRY, C. J., and WOLCOTT and CAREY, JJ., sitting.

Wolcott, Justice: This is an appeal from the approval by the Chancellor of an agreement settling a derivative action brought on behalf of the ten Keystone Custodian Funds (hereafter "the Funds") against the Trustee of the Funds, Keystone Custodian Funds, Inc., (hereafter "Keystone"), its directors, and The Keystone Company of Boston (hereafter "Keystone of Boston"), a wholly-owned subsidiary of Keystone, and the sole underwriter of certificates of participation in the Funds. Both corporate defendants are Delaware corporations.

The Funds are ten common law trusts created in 1935. Each fund is an open-end investment company registered as such under the *Investment Company Act* of 1940 (15 *U.S.C.* §§ 80a–1 et seq.), (hereafter the "Act"). Each fund differs from the others in the matter of investment portfolios and objectives. Under the trust agreements creating the Funds the certificate holders cannot vote for the election of a board of directors. In fact, the Funds has no board of directors as such.

The ten funds each exist under a separate trust agreement. Keystone is the trustee under each of the trust agreements. Under the terms of the trust agreements Keystone performs all of the investing management and administrative services required by the Funds. In return for its services the trust agreements provide for the annual payment to it of a management fee of $\frac{1}{2}$ of 1% on the first $150,000,000 in aggregate assets and of $\frac{3}{8}$ of 1% on aggregate assets in excess of that amount. The trust agreements provide for the payment to Keystone of an annual "recurring charge" of $\frac{1}{4}$ of 1% in lieu of all operating and administrative expenses.

Certificates of participation in each of the funds are offered for sale by Keystone of Boston pursuant to a principal underwriting contract between Keystone and Keystone of Boston. The holder of a certificate of participation by reason of his purchase becomes a party to the trust agreement governing the fund in which he participates.

As a result of the operation of the Funds its net assets grew from approximately $282,500,000 in 1952 to approximately $677,760,000 in 1962. Keystone's management fee grew from approximately $1,100,-000 in 1954 to approximately $2,650,000 in 1962, and the recurring charge collected by Keystone grew from approximately $600,000 in

1954 to approximately $1,645,000 in 1962. In June of 1963 the net assets of the Funds totaled more than $770,000,000.

Keystone of Boston, wholly owned by Keystone, the sole distributor of the certificates of participation of the Funds, pursuant to its agreement with Keystone, charged the purchasers a sales load or commission equal to 8.3% of the sales price on all sales up to $25,000 and smaller percentages on larger sales. For the period 1954 to 1962 the net return to Keystone of Boston has ranged from approximately $929,000 to $2,895,000.

This action was instituted on behalf of the Funds and charged that the defendants had committed waste of the Funds' assets by causing the payment of excessive management fees and recurring charges: that defendants had breached their fiduciary duty by awarding the underwriting contract to Keystone of Boston, and that the underwriting contract and management fee schedule were void because they had not been submitted to the certificate of participation holders for approval as required by the Act.

Defendants answered denying any wrongdoing and moved for summary judgment based upon the pleadings, affidavits, exhibits and depositions. Defendants' motion for summary judgment was granted in part and denied in part by the Chancellor. *Saminsky v. Abbott,* 40 *Del.Ch.* 528, 185 *A.2d* 765.

The Chancellor held that the fact that the trust agreements in question provided for a schedule of fees to Keystone, the trustee, did not estop the investors in the Funds from objecting to allegedly excessive compensation to the trustee under the principles of *Rogers v. Hill,* 289 *U.S.* 582, 53 *S.Ct.* 731, 77 *L.Ed.* 1385, which he held to be applicable to those common law business trusts. He also held that such amount of the recurring charges as could be demonstrated to be in excess of the actual operating expenses of the Funds should be considered as additional compensation to Keystone. However, the Chancellor reserved for trial on the merits the factual determination of these issues.

With respect to the underwriting contract with Keystone of Boston, the Chancellor held the contract void as a violation of the Act for

the failure to submit it periodically for shareholder approval as required by the Act. With respect to the argument made by plaintiffs to the effect that Keystone was acting as investment adviser of the Funds in violation of the Act, the Chancellor gave judgment for the defendants.

We point out that the correctness of none of these holdings of the Chancellor is before us in this appeal for the reason that the appeal is from his approval of an agreement of settlement of the action brought about in part at least by these rulings. Neither side to the appeal seeks review of the correctness of his rulings made in his first opinion.

Following the Chancellor's decision, leave was granted the defendants to file further affidavits and a brief in support of their original motion. Prior to reargument of the summary judgment motion, the holders of the certificates of participation of the Funds at a meeting called for the purpose overwhelmingly ratified and approved all payments to Keystone of management fees and recurring charges, and further approved a new underwriting contract between Keystone and Keystone of Boston, at the same time ratifying and approving the past underwriting contracts and transactions under them. More than 90% of the certificate holders of each fund voted for ratification. There is no contention made that Keystone failed to make full disclosure of the matters the certificate holders were being asked to ratify and approve.

Thereafter, negotiations between the parties resulted in an agreement of settlement. In brief, the settlement agreement provided for a scaled down schedule of management fees and recurring charges which, on the basis of net assets of $771,000,000 at the time of settlement, amounted to an annual savings to the Fund of in excess of $250,000. The agreement of settlement also provided that the certificate holders would have the permanent right to reject any increase in compensation proposed by Keystone, and that for a period of eight years Keystone would not seek any increase in compensation unless a change in circumstances made its compensation unreasonably low and the Chancellor granted leave to Keystone to submit the proposed increase to the certificate holders.

Pursuant to *Rule* 23 of the *Court of Chancery, Del.C.Ann.*, the proposed settlement was set down for hearing and the certificate holders of the Fund given notice. Only the appellants appeared at the hearing as objectors and offered in opposition the testimony of an economist who characterized the proposed settlement as unfair. The Chancellor approved the settlement, *ante* p. 320, 194 *A.2d* 549 and from that approval this appeal is taken.

Recently, in *Rome v. Archer, ante* p. 404, 197 *A.2d* 49, we had occasion to restate the function of this court on appeal from an approval of the settlement of a derivative action. We pointed out that we review the record for the sole purpose of determining whether or not under the circumstances the approval of the Chancellor of the settlement was an abuse of his discretion, and that in order to make a finding that he abused his discretion the evidence must be strongly to the contrary. We approach the decision in this appeal in the light of this limitation.

Appellants argue that there was no evidence properly before the Chancellor except the testimony of their expert witness who characterized the settlement as unfair. We think not, however, for at the hearing the Chancellor ruled that the entire record was before him for the purpose of passing on the settlement. The appellants argue there was no actual offer into evidence of the depositions, exhibits, etc. However, these were all before the Chancellor and he obviously decided the case upon them. To argue that because no formal offer into evidence was made the matters contained in the record may not be considered, is to stand upon too narrow a technicality, particularly in view of the Chancellor's statement from the Bench that he would decide the case upon everything on file. The point is without merit.

Next, appellants argue that since the Funds as such had no board of directors and since the directors of Keystone, the trustee, performed the functions of a board of directors of the Funds, it follows that the individual defendants are at one and the same time directors of the investment adviser, Keystone, and of the Funds in Violation of § 10(a) of the Act which prohibits more than 60% of such a board from being "affiliated" with the investment adviser. It is therefore argued that

the complaint set forth a valid enforceable claim under the Act which was improvidently given up by the settlement.

■ In the first place, Keystone is not the investment adviser of the Funds. It is the trustee. As such, therefore, it is excluded in terms from the statutory definition of an investment adviser found in § 2(a) (19) of the Act. Furthermore, there is in existence no investment advisory contract between Keystone and the Funds which, under § 15(a) of the Act, must by law be approved by a majority of the shareholders.

■ In the second place, since the Funds do not have an investment adviser within the meaning of the Act, it follows that there is none with whom directors of the Funds could be "affiliated" within the prohibitory limits of § 10(a) of the Act. Furthermore, it is obvious to us that the relationship between Keystone and the Funds and its certificate holders is that of trustee and beneficiary. The propriety of this relationship under the Act seems to be recognized by § 16(b).

The whole of appellants' argument based upon the Act seems little more than an attempt to distort the true nature of the Funds and Keystone into a mold which would fit neatly into one of the prohibited areas of the Act. The difficulty is, however, that the argument in reality is a complaint that the Congress did not pass the Act in a form more acceptable to appellants.

■ Next, appellants argue that since Keystone was at the same time trustee and adviser of the Funds, an improper conflict of interest existed which will be perpetuated by the settlement. The difficulty with the argument is that this situation existed at the time the certificate holders acquired their interest in the Funds. It is true, of course, that the compensation arrangement was in no sense a negotiated one, but this, too, was obvious to any investor in the Funds. There is no rule of common law we know of which makes such an arrangement invalid. The usual rule prohibiting trustees from self-dealing, we think, has no application to this arrangement set up by contract and of which the investor knew when he acquired his interest in the Funds.

██ Appellants argue that since the complaint charges a waste of the Funds' assets, making applicable the rule of *Rogers v. Hill,* supra, the ratification by the certificate holders is entitled to no consideration. While the doctrine of *Rogers v. Hill* was held to be applicable in this case if the facts of waste were established the Chancellor in *Saminsky v. Abbott,* supra, reserved for future determination what these facts were. Such determination was forestalled, however, by the agreement of settlement. The allegation of waste in the complaint, however, does not, of itself, establish a waste of assets. It is quite apparent to us that the Chancellor considered the charge of waste and was of the opinion that, even if successfuly established, it was doubtful at least that the ultimate recovery would have exceeded the settlement gains. Having reached this conclusion, it was proper for the Chancellor to give to the shareholders' ratification some consideration. *Saxe v. Brady,* 40 *Del.Ch.* 474, 184 *A.2d* 602. At the very least, such ratification demonstrates that reasonable businessmen might differ upon the propriety of the settlement in which event the duty of the court is to approve the settlement. *Rome v. Archer,* supra.

█ Finally, appellants argue that the management fees and recurring charges established by the settlement agreement are excessive and are noncompetitively established. The answer to this contention is that the fees and charges paid by the Funds when compared to the fees and charges of other investment companies which have been approved by the courts are not only in line but are less. See *Saxe v. Brady,* supra, and *Acampora v. Birkland, D.C.,* 220 *F.Supp.* 527. If this comparison is not conclusive of the matter, yet it casts a heavy doubt upon the ability to press the claim for excessive compensation to a successful conclusion. So heavy is this doubt, in fact, that alone it justifies the approval of the settlement by the exercise of business judgment.

Appellant, however, argues that a comparison with the fees paid by other investment companies is meaningless because none of the fees has been established competitively. It seems to us, however, that generally speaking the fact that all such fees show a pattern of uniformity suggests strongly that they have been established by forces which, in a sense, are the equivalent of competition. Furthermore, appellants do

not suggest any means of using competition to establish fees, nor can we think of one. The economic facts preclude it.

We conclude, therefore, that the appellants have failed to demonstrate any illegality in the structure of this investment operation, or to demonstrate that the complaint sets forth a cause of action for excessive compensation or waste of assets which had any reasonable probability of ultimate success in the event of trial on the merits. This being so, the approval of the settlement by the Chancellor was a proper exercise of business judgment.

The judgment below is affirmed.