LEONARD S. and BARBARA L. GOODMAN, Objecting Stockholders of
Giant Food Inc.,
Below, Appellants,

*vs.*

CHARLES J. FUTROVSKY,
Plaintiff Below, Appellee,

and

N.. M. COHEN, EMANUEL COHEN, JACOB LEHRMAN, ISRAEL COHEN
and GIANT FOOD INC., Appearing Defendants Below, CHARLOTTE
FERSON LEHRMAN, JOSEPH B. DANZANSKY, and ISRAEL COHEN,
EMANUEL COHEN and LILLIAN C. SOLOMON, doing business
under the firm name and style of Max Shapiro, non-appearing
Defendants Below, Appellees.
Defendants Below, Appellees.

*Supreme Court, On Appeal, September 17, 1965.*

Reargument Denied Oct. 25, 1965.

*Richard L. Sutton,* of Morris, Nichols, Arsht & Tunnell, Wilmington, and *Leonard S. Goodman,* Washington, D.C., for appellants.

*Irving Morris,* of Cohen, Morris & Rosenthal, Wilmington, and *Abraham L. Pomerantz,* of Pomerantz, Levy, Haudek & Block, New York City, for appellee Charles J. Futrovsky.

*Howard M. Handelman,* of Bayard, Brill, Russell & Handelman, Wilmington, for Giant Food Inc.; *Richard F. Corroon,* of Berl, Potter & Anderson, Wilmington, for individual defendants, and Danzansky & Dickey, Washington, D.C.

WOLCOTT, Chief Justice, CAREY, Justice, and WRIGHT, Judge, sitting.

WOLCOTT, Chief Justice: This is an appeal by objecting stockholders of Giant Food, Inc. (hereafter "Giant"), from the Vice Chancellor's approval of a settlement of a stockholder's derivative action. The action was commenced by the stockholder, Futrovsky, appellee here. The complaint charged that the officers and directors of Giant caused it to purchase all of its produce requirements from Max Shapiro, a partnership, owned by the Cohen and Lehrman families, also in control of Giant; that Shapiro serves no useful business purpose for Giant; and that Shapiro is solely a device to divert profits from Giant to the Cohen and Lehrman families. As an alternative, the complaint charged that if in fact Shapiro did perform a business function for Giant, its profits had become excessive.

Following a period of legal research and discovery, plaintiff's counsel concluded that the first theory advanced in the complaint was without merit, but that the second theory, *i.e.*, the unfairness to Giant of the excessive earnings of Shapiro, under the rule of *Rogers v. Hill*, 289 *U.S.* 582, 53 *S.Ct.* 731, 77 *L.Ed.* 1385, and *Saxe v. Brady*, 40 *Del.Ch.* 474, 184 *A.2d* 602, held forth some prospect of recovery. In the light of this conclusion the settlement agreement was negotiated.

The settlement provided in substance that Giant and Shapiro shall enter into a 10-year contract under which Shapiro shall supply all produce required by Giant; that Shapiro's annual profits shall be the lesser of 3.9% of its net sales to Giant, or $350,000; that at the end of the contract period Giant shall have an option to purchase Shapiro for $1,500,000; that releases shall be given to the individual defendants, and that Giant shall pay plaintiff's counsel a fee of $100,000.

The Vice Chancellor ordered notices to be sent to the 2,770 stockholders of Giant of a hearing on the fairness of the proposed settlement. At the hearing the objectors, appellants here, and one other stockholder appeared in opposition to the settlement. The Vice Chancellor approved the settlement and this appeal followed.

A short statement of the factual background of Giant and Shapiro seems required. In 1935 the Cohen and Lehrman families started a supermarket business in the Washington, D.C. area. The enterprise has since been and is now under the equal control of the Cohen and Lehrman families. Giant grew from one store opened in 1936 to fifty supermarkets in 1959, grossing an average of $2,650,000 annually per store.

Prior to 1940 Giant purchased its produce direct from wholesalers but in 1940, in order to establish and maintain a uniform standard for produce, formed a produce company to supply its produce requirements. Accordingly, Washington Wholesale Produce Company was organized and financed by the Cohen and Lehrman families. This company acquired produce from other wholesalers in less than carload lots and then resold it to Giant.

During World War II, due to the heavy demands of the armed services, the primary sources of produce established a quota system among wholesalers. No such quota was available to Washington Wholesale Produce Company since it had always theretofore purchased produce through other wholesalers. Giant, therefore, found itself at a disadvantage in acquiring the produce needed for retail in its stores.

In 1944 Max Shapiro, a large produce wholesaler in the Washington area, was offered for sale. Primarily, in order to acquire the quotas belonging to Shapiro, the Cohen and Lehrman families bought it, using funds supplied from their personal assets. At the time of this purchase the members of these two families were the only stockholders of Giant.

Shapiro thereafter has supplied the produce requirements of Giant. In so doing, it sells to Giant at prices which enable Giant to retail on a competitive basis, which sometimes requires Shapiro to readjust its prices to Giant, even on occasion taking a loss on some particular item. The result has been a constantly maintained high standard for produce. So much so that the rate of rejection of low quality produce by Giant has been reduced in the past few years to only 1% or 2%.

In 1959, in order to further expand Giant, the Cohen and Lehrman families decided to attract new capital by a public offer of Giant stock. Accordingly, in that year, through Auchincloss, Parker & Redpath, and Kidder, Peabody & Co. Incorporated, principal underwriters, 200,000 shares of nonvoting Common Stock A was sold to the public at $16 per share. The offer was made with the stated intention on the part of Giant to put the Common Stock A on an annual dividend basis of 40¢, which has since been maintained.

Prior to the public offer of Giant Common Stock A the underwriters suggested to the Cohens and Lehrmans that they include Shapiro in Giant's assets in consideration of 135,000 shares of Common Stock A, later increased to 335,000 shares. Finally, however, the underwriters and the directors of Giant concluded that an additional 335,000 shares would dilute the offer of Common Stock A to be offered to the public. It was therefore concluded wise to continue the separate existence of Giant and Shapiro.

The Common Stock A was sold in 1959 under a Prospectus which fully revealed the relationship between Giant and Shapiro, including ownership of Shapiro by the Cohen and Lehrman families. In this connection, it was stated that Shapiro did business only with Giant, that its earnings varied from 3.5% to 4.4% of its net sales to Giant, amounting in 1959 to $334,715, and that it was the intention of the owners of Shapiro to continue its net profit from its business with Giant for the future in the established percentage ranges.

The Prospectus of 1959 was followed with others of 1961 and 1963, all of which are on file with the Securities and Exchange Commission and the American Stock Exchange. All of them set forth to the same extent as in the original the Giant-Shapiro relationship.

We are concerned in this appeal with review of the approval of a settlement of a derivative action. The function of this Court in such a review is merely to determine whether or not the court below has committed an act of judicial indiscretion in approving the settlement in the exercise of business judgment. We do not exercise our own judgment to determine anew the question of the intrinsic fairness of the settlement. *Hoffman v. Dann, Del.,* 205 *A.2d* 343.

The appellants take the position that the purchase by Giant of all of its produce requirements from Shapiro is a fraud upon Giant and its Common Stock A since, it is argued, it serves no purpose other than diverting to the Cohens and Lehrmans profits which otherwise would inure to the benefit of Giant's stockholders. They say, therefore, that it was improvident to enter into the settlement before us dismissing a cause of action clearly meritorious.

We think, however, that appellants are wrong when they categorize the original acquisition of Shapiro by the Cohens and Lehrmans as a fraud on Giant. At the time of acquisition the Cohens and Lehrmans were the sole owners of Giant and could do with it as they wished. It was entirely proper, at least at that time, for them to decide to acquire Shapiro and keep its existence separate from Giant. Particularly is this so when they used their own money, not Giant's, to make the purchase. At the time of purchase, furthermore, there was no one with standing to object to the decision thus made.

The situation, therefore, was that the Cohens and Lehrmans at the time the public offer of Giant stock was made owned two separate and distinct businesses. They finally determined to permit the public to buy a share of only one of them—Giant. This, it seems to us, was their privilege, and the buying public may not complain of that decision as long as it was not misled to its injury.

The plain fact is that in 1959 there was no intention on the part of the Cohens and Lehrmans to include Shapiro as an asset of Giant in their offer to sell Giant stock. Full disclosure of that fact was made in the Prospectus under which the stock was offered to the public. It is quite plain, therefore, that the purchasers of Giant stock knew at the time that they were buying into Giant and that Giant for the future would continue to buy its produce from the independent wholesaler, Shapiro. In the light of this knowledge the purchasers will not be heard to now claim that they are entitled to something for which they have not paid.

If authority is needed for this conclusion, it is to be found in *Solimine v. Hollander,* 128 *N.J.Eq.* 228, 16 *A.2d* 203, a case almost

directly in point. We think, however, no authority is needed to support a conclusion resting on common sense and elementary fairness.

Appellants argue that there is no proof that the public stockholders of Giant in fact received copies of the Prospectus prior to the purchase of their stock. However, Section 5(b)(2) of the *Securities Act* of 1933 (15 *U.S.C.* § 77 *et seq.*) required as a practical matter that the 1959 purchasers of Giant stock be furnished with a copy of the Prospectus.

It is argued, however, that there are loopholes in Section 5 which were taken advantage of by the underwriters to insure that the original purchasers did not receive a copy of the Prospectus. The argument is tenuous at best and is directly contradicted by the answer averring that the plaintiff received a Prospectus at the time of his purchase. On the record before us we think we would be wrong to ascribe to the underwriters an intention to circumvent the clear intention of the Securities Act which is to force full disclosure of pertinent information.

We think it most probable that the 1959 purchasers of the Giant stock made their purchases with full knowledge of the separate existence of Shapiro and the intention to continue that separate existence. The original purchasers could not, therefore, successfully complain of the continuance of Shapiro as a separate business. *Finch v. Warrior Cement Corp.*, 16 *Del.Ch.* 44, 141 *A.* 54; *Elster v. American Airlines, Inc.*, 34 *Del.Ch.* 94, 100 *A.2d* 219.

All of the present holders of Giant's Common Stock A including the objectors trace the title to their shares to the purchases of the 1959 issue. This being so, they are bound by the acquiescence, with full knowledge, of their predecessors and are now precluded from attacking the Giant-Shapiro relationship. 13 Fletcher, Cyclopedia of Corporations, § 5866; *Henderson v. Plymouth Oil Co.*, 15 *Del.Ch.* 40, 131 *A.* 165.

We think, therefore, that the first theory for recovery advanced in the complaint was properly determined by counsel for the plaintiff to have no merit. As a result of this, the settlement was nego-

tiated upon the alternate theory of recovery, the allegedly excessive earnings of Shapiro. Appellants, however, contend that the settlement in fact confers no benefit upon Giant.

We think to the contrary, however. In the first place the future earnings of Shapiro are limited to not in excess of $350,000 annually. The 1963 earnings of Shapiro were $403,767, and its estimated earnings on the old basis for 1964 and 1965 are $417,300 and $471,900 respectively. Assuming conservatively, in view of the rapid growth of Giant in the past and the prospect of a further continuance of growth for the future, that the savings to Giant made by the restrictions on Shapiro's profit amounts to $100,000 annually, the total saving to Giant over the ten-year life of the contract is $1,000,000.

In addition, at the end of the contract term Giant has an option to purchase Shapiro at the fixed price of $1,500,000 which is 4.8 times the $350,000 annual earnings of Shapiro permitted by the settlement. Furthermore, not without significance in this connection is the fact that in 1959 the underwriters offered in effect to purchase from the Cohens and Lehrmans the Shapiro business for 335,000 shares of the Common Stock A valued at $16 per share. This set a value of Shapiro at $5,260,000. We think, under the circumstances, that an option to purchase Shapiro for $1,500,000 cannot be said to be inequitable.

For the foregoing reasons we affirm the judgment below approving the settlement.