154 A.2d 146 (1959)
Louis S. NADLER, Sophie G. Nadler, Harry Krieger, Pearl S. Krieger, Rose S. Golomb, Molly Golomb and Eva Myra Epstein, Plaintiffs,
v.
BETHLEHEM STEEL CORPORATION, Donald T. Aikenhead, James P. Bender, Norborne Berkeley, Frank R. Brugler, Stewart J. Cort, Harry C. Crawford, Eugene G. Grace, Keenan L. Griffith, Arthur B. Homer, Jesse V. Honeycutt, Paul S. Killian, Joseph M. Larkin, Robert E. McMath, Arthur F. Peterson, Daniel D. Strohmeier, Russell K. Branscom, Bernard D. Broeker, Paul B. Entrekin, Francis M. Huffman, William H. Johnstone, Ivor D. Sims, Edmund F. Martin and Talbot Shelton, Defendants.
Court of Chancery of Delaware, New Castle.
August 26, 1959.
On Reargument September 16, 1959.
William E. Taylor, Jr., Wilmington, and Nathan B. Kogan, New York City, for plaintiffs.
Robert H. Richards, Jr. (of Richards, Layton & Finger), Wilmington and Albert R. Connelly (of Cravath, Swaine & Moore), New York City, for defendants.
Joseph T. Walsh (of Logan, Marvel, Boggs & Theisen), Wilmington, and Mortimer A. Shapiro, New York City, for objectants, Henry Schwartz and Dorothy Schwartz.
*147 Abraham Hoffman, Wilmington, and Abraham I. Markowitz, New York City, for objectant, Jerome G. Rose.
Irving Morris (of Cohen & Morris), Wilmington, and Martin Horwitz, New York City, for objectants, Shirley Krieger and Benjamin Richland.
Irwin M. Taylor (of Kaufman, Taylor & Kimmel), New York City, for objectant, Irving Miller.
MARVEL, Vice Chancellor.
The complaint[1] in this case, as amended on September 27, 1957, charged the individual defendants with breaches of fiduciary duty as directors and officers of the corporate defendant or of its subsidiaries in allegedly causing excessive corporate salaries and other forms of compensation to be paid to themselves and other employees of Bethlehem during the years 1954 through 1956. While plaintiffs' attack is directed against a number of compensatory devices, including pension and stock option plans, used to compensate Bethlehem's executives, plaintiffs' primary complaint is against a long standing corporate charter provision[2] designed to provide for the payment of incentive cash compensation to Bethlehem's key employees, charging that such provision has been improperly used by interested directors in certain years so as to cause the payment of increased compensation payments notwithstanding reduced earnings. It is contended that such so-called incentive payments have not in fact been based on results accomplished, bear no necessary relationship to net earnings, but rather depend on interested directors' own discretion as to the payment of dividends. This Article Tenth of Bethlehem's certificate of incorporation provides for the creation of a cash fund for incentive payments by the setting aside of 4½%[3] of each cash dividend paid on Bethlehem's common stock for such purpose. The complaint prays for an accounting from the individual defendants of amounts of allegedly excessive moneys received and disbursed by them as a result of the methods of compensation attacked by plaintiffs, the enjoining of the granting and exercise of stock options, and the granting of damages.
On October 2, 1957, plaintiffs' motion for a restraining order enjoining defendants from proceeding to carry out a stock option plan approved by the stockholders on September 17, 1957 was denied. Thereafter, the case, insofar as the record discloses, became inactive except for the pre-trial taking of the testimony of Bethlehem's president, Arthur B. Homer, until the filing on June 4, 1959 of an updated second amended complaint, an answer thereto, a petition for approval of a proposed settlement of the case, together with the continued deposition of Arthur B. Homer which was completed on May 29, 1959. On June 9, 1959, the directors, having been apprised of discussions aimed at reaching a settlement with plaintiffs on the basis of the terms of a proposed amendment of Article Tenth, resolved that it was advisable to amend such article of Bethlehem's corporate charter so as to eliminate the concept of incentive compensation based on a percentage of cash dividends and to substitute therefor a dividend unit plan "* * * In order to provide an incentive to increased efficient and profitable management * * *" The board further resolved to call a special meeting of stockholders for July 28, 1959 *148 for the purpose inter alia of taking such action as they might deem advisable "* * upon and with respect to the proposed amendment of Article Tenth * * *"
Thereafter, the stockholders were given notice of the proposed meeting and were furnished with a copy of a proposed corporate amendment providing for a substitute plan of incentive compensation based on a granting of dividend units, the notice further providing:
"In September, 1957, an action was commenced in the Court of Chancery, New Castle County, Delaware, by holders of record of 540 shares of the Common Stock of the Corporation. The amended complaint in the action alleges that the incentive payments provided for in Article Tenth of the Amended Certificate of Incorporation of the Corporation and other compensation paid have been excessive and seeks, in the right of the Corporation, an accounting by the individual defendants, directors of the Corporation, `for the moneys paid to them or for their account as executives and directors of the Corporation and damages and also seeks to enjoin the granting of options under the Stock Option Plan of the Corporation and to enjoin the exercise of any options granted under such Plan. The defendants have filed an answer which denies the allegations of wrongdoing set forth in the amended complaint.
"The proposal to amend Article Tenth, as described in this Proxy Statement, has been developed in discussions with the plaintiffs in the above-mentioned action. After consideration of the proposed changes, such plaintiffs have made an application requesting the Court in such action, after notice to the stockholders of the Corporation and hearing in open court, to approve the settlement of the action and to dismiss the amended complaint on the basis of the terms of the proposed amendment. A copy of the notice of such hearing, which is to be held on July 13, 1959, is being sent to all holders of record of stock of the Corporation at 3:30 P.M. Eastern Daylight Saving Time, on June 19, 1959. It is expected that, if the Court after such hearing shall enter an order dismissing the amended complaint, such order will be made contingent upon the adoption of the proposed amendment of Article Tenth by the stockholders of the Corporation. If the Court shall not have entered its order on the above-mentioned motion by July 28, 1959, the time fixed for the Special Meeting of the Stockholders to take action upon the proposed amendment, such Meeting will be adjourned from time to time until such order shall be entered. If the Court shall determine that such order should not be entered, any action to be taken with respect to the amendment of Article Tenth will be the subject of a further notice to the stockholders of the Corporation."
As matters now stand, the July 28 special meeting of stockholders stands adjourned insofar as action to amend Article Tenth of Bethlehem's charter is concerned, the adjourned date for stockholder action, if any, now being fixed for August 27, and this is the opinion of the Court on the fairness and desirability of the settlement proposed by the original litigants.
At the July 13 hearing, a number of stockholders appeared by counsel and objected to the proposed settlement, contending basically that it virtually ignores the merits of this action, as originally conceived, and that approval of such settlement agreement and the adoption of the new plan by the stockholders will result in director-officers actually receiving in the future more liberal compensation than that presently and formerly paid to them. Plaintiffs, on the other hand, in their petition for approval of the proposed settlement state: "Based on dividends at the rate paid in 1958 and thus far in 1959 the *149 proposed settlement will produce not only an immediate reduction of approximately $1,200,000[4] in cash compensation to the executives in the second half of 1959, but should also for many years to come reduce substantially the amount of cash compensation paid to executives, as well as reduce the number of shares covered by options to be granted to them."
This language is repeated in the notice to stockholders sent pursuant to Court order of June 4, 1959 and points up succinctly the immediate and tangible cash saving to the corporation in terminating, as of July 1, 1959, the payment of large cash incentive payments pursuant to present Article Tenth of the charter, which sums would thereupon become available for business purposes.
The plan proposed to be substituted for Bethlehem's present cash incentive plan contemplates the deferral or stretching out of compensation through the crediting to executives of dividend units in proportion to the cash compensation received by them. These dividend units are to be taken at the market value of Bethlehem's common stock at the beginning of the year (July 1 in the year 1959) in an aggregate amount equal to 2% of the consolidated net income for such year (one half of such amount for 1959).[5] A dividend unit when granted entitles its holder or his estate to receive for a minimum period of fifteen years following retirement or death a cash payment equal to each cash dividend paid on one share of Bethlehem's common stock, and represents in effect, subject to certain limitations,[6] a life interest in a share of such stock for the faithful director grantee. Similar plans containing capital gain benefits in addition to dividend credits have been adopted by other corporations, Berkwitz v. Humphrey, D.C.N.D.Ohio E.D., 163 F. Supp. 78, and Lieberman v. Koppers, Co., Inc., Del.Ch., 149 A.2d 756. In each of these cases the device of deferring compensation through the use of dividend credits was recognized as a proper means of stretching out incentive income into the years of retirement, thereby minimizing taxes to a considerable extent, however, to date an appellate court has not to my knowledge had occasion to pass on the soundness of such a compensatory plan.
However, accepting the dividend unit aspect of such a device as well within the business judgment rule (Lieberman v. Koppers Company, Inc. supra), defendants argue that inasmuch as the incentive fund provided for under the present plan is made up of 4½% of dividends paid on common stock during a year, so long as dividends are not less than 44% of earnings (a conservative estimate), 2% of consolidated net earnings will always be less than 4½% of dividends, thereby insuring that the proposed new method of compensating executives must necessarily prove to be less costly to the corporation than the present incentive plan. Amounts paid out to unit holders are, of course, not actually dividends but compensation, and will accordingly be deductible by the corporation during the lifetime of a unit. It is accordingly contended strenuously that notwithstanding objectants' elaborate projections and reconstructions (which apply the new formula to past years and come up *150 with a large ultimate cost increase)[7] that under no circumstances can it reasonably be said that the new plan will turn out to be more costly to the corporation than the present plan. However, there is no clear guarantee, as I see it, that dividend credits in any one year under the proposed plan, will not exceed 4½% of annual dividends. Furthermore, fixed salaries, as noted above, would be substantially increased under the new plan, and the proxy statement concedes that: "It is possible that, by some date in the future his (an executive's) aggregate cash remuneration, including the cash payments on his accumulated dividend units, may exceed the total amounts that he would have received by the same date as fixed salary and as special incentive compensation under Article Tenth as now in effect."
While the probable validity of plaintiffs' claims in terms of recoverable dollars, the actual value of the settlement, and the possibility of a greater recovery after trial are normally matters for judicial consideration in passing on a settlement, in my opinion there is no present need of making a precise financial analysis of the proposed plan vis-à-vis plaintiffs' claims (making proper allowances for the discounting of future payments and the benefits to the corporation in retaining cash) because a true settlement proposal is not before me. To be sure the immediate effect of the adoption by the plan by the stockholders would be an immediate reduction of $1,200,000[8] in cash payments to executives for this year, however, the formula for future payments involves vast sums, and if I were to approve the form of order submitted after the settlement hearing, then "* * * The Stipulation of Settlement * * * shall be carried out in accordance with its terms and shall be binding upon the plaintiffs in this action, and upon all other stockholders of the Corporation and upon the Corporation." In my opinion the proposal before me is not entitled to such a sweeping stamp of approval.
While it is not the proper function of this Court in testing the overall fairness of a proposed settlement to rehearse a trial, Braun v. Fleming-Hall Tobacco Co., 33 Del.Ch. 246, 92 A.2d 302, 308, a proferred settlement should not be permitted to serve as a device for obtaining summary court sanction of a new and controversial substitute incentive plan which purports to do much more than merely reduce the size of the present compensation fund. The expectation that the proposed plan will not, according to defendants, prove more costly to the corporation than the present plan (a conclusion which is violently rejected by objectants) and may very well prove to be an entirely valid and desirable step in setting up a more effective incentive plan, is not, in my opinion, a fair basis for settlement, the new compensatory plan not being a mere cutting down of the percentage payable into an incentive fund but a new and radical departure from the theory of original Article Tenth. Compare Rogers v. Hill, D.C.S.C.N.Y., 34 F.Supp. 358. Finally, even assuming that the new plan must necessarily be somewhat less costly in the long run than the present plan, approval of the settlement would leave the merits of plaintiffs' case considered purely as one based on payments of allegedly excessive executive compensation virtually ignored.
*151 If plaintiffs' case is without technical legal merit, Kaufman v. Shoenberg, 33 Del.Ch. 211, 91 A.2d 786, and if the amounts paid the individual defendants are not so large as to amount to spoliation or waste, Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385, it should be dismissed summarily. If it has merit and can be settled, such settlement should relate directly to the matters complained of. It should not be used to provide a basis for obtaining advance judicial approval of an experimental substitute incentive plan for Bethlehem's executive directors.
An order disapproving the proposed settlement may be submitted.
On re-argument an amended stipulation of settlement entered into by all parties including the objectants and designed to meet the objections raised in the opinion was presented and approved.
NOTES
[1] By amendment to the complaint the action was brought up to date on June 4, 1959 but its theory has not been changed.
[2] In its present form Article Tenth defines the persons who shall be eligible to receive special compensation under the plan as persons who shall be employees "* * * and shall be directors of the Corporation."
[3] From the date of the 1936 merger of the original New Jersey corporation with the then subsidiary Delaware corporation until January 17, 1957, such percentage was 62/3%. Subsequently such percentage was reduced to 5%, and more recently (September 17, 1957) to 4½%.
[4] Based on estimated annual cash compensation payments of $2,400,000 or 4 1/2% of current annual dividends.
[5] Applying one half of year earnings under the proposed formula rather than those of the second half would reduce the impact of the present strike on 1959 compensation under the new plan.
[6] "Each `dividend unit' will entitle the holder to receive from the Corporation a cash payment equal to each cash dividend that shall be paid on one share of Common stock of the Corporation after the crediting of the unit but during the lifetime of the executive (but in any event until the fifteenth anniversary of the termination by death or otherwise, of his service with the Corporation and its subsidiary companies). The payments to be made on the `dividend units' will be subject to the earlier termination of such units as hereinafter described." Proxy statement of June 9, 1959.
[7] In order to avoid a too drastic cut of current cash compensation were the dividend unit plan (with its deferred compensation aspects) to be adopted, management proposes that in such event, effective July 1, 1959, salaries of affected executives shall be fixed at amounts of approximately 60% of the remuneration received by such an executive in 1958, with the right reserved to the Board of Directors to make necessary changes in such salaries. Objectants contend such large fixed salaries are not an appropriate part of a true incentive plan.
[8] One half of estimated savings for a full year.